MID-ATLANTIC COCA-COLA BOTTLING
COMPANY, INC. *v.* CHEN, WALSH &
TECLER, A PARTNERSHIP ET AL.

[Misc. No. 28, September Term, 1982.]

*Decided May 27, 1983.*

The cause was argued before SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), specially assigned.

*Benjamin Rosenberg,* with whom were *Alison D. Kohler* and *Venable, Baetjer and Howard* on the brief, for appellant.

*John F. McCabe, Jr.,* with whom were *Wilkes, Artis, Hedrick & Lane, Chartered* on the brief, for appellees.

MENCHINE, J., delivered the opinion of the Court.

The United States District Court for the District of Maryland pursuant to Maryland Code (1980 Repl. Vol.), Section 12-601 of the Courts and Judicial Proceedings Article, has certified for our determination the following questions of state law:

1. Whether an advertising promotion which awards prizes on the basis of chance to persons who purchase the company's products and which also provides methods for entering the promotion without purchasing the company's products is an illegal lottery under Section 356, et seq., of Article 27 of the Annotated Code of Maryland; and

2. Whether, after the repeal by the Maryland General Assembly of Section 369A of Article 27 of the Annotated Code of Maryland, a promotion sponsored by a bottler and distributor of soft drink products which awards prizes on the basis of chance for the purpose of advertising and promoting products but which does not require purchase of a product in order to participate is prohibited under Maryland law.

The public policy of the State of Maryland concerning lotteries is shown by Article III, Section 36 of the Maryland Constitution which reads as follows:

"No lottery grant shall ever hereafter be authorized by the General Assembly, unless it is a lottery to be operated by and for the benefit of the State."

and by Maryland Annotated Code, Article 27, Sections 356 and 359 that read respectively as follows:

## Section 356

"No person shall draw any lottery or *sell any lottery ticket* in this State; nor shall any person sell what are called policies, certificates or anything by which the vendor or other person promises or guarantees that any particular number, character, ticket or certificate shall in any event or on the happening of contingency entitle *the purchaser* or holder to receive money, property or evidence of debt." [Emphasis added]

## Section 359

"In addition to the penalties prescribed in § 358 of this article, *any person who shall give money or any other thing* for any lottery ticket, certificate, or any other device, by which the vendor promises that he or any other person will pay or deliver to the purchaser any money, property or evidence of debt, on the happening of any contingency in the nature of a lottery, such person so giving may recover, as small debts are recoverable, from the person to whom he gave the same, or his aiders or abettors, the sum of fifty dollars for every lottery ticket, certificate or other device in the nature thereof *so purchased or obtained by him.*" [Emphasis added]

Thus, in Maryland, a lottery operated by others than the State itself is unlawful and subjects its sponsor to the dual penalties of criminal fine or imprisonment and of civil liability to a purchaser.

It seems appropriate to emphasize at the outset the legislative use of the word "sell" in Section 356, *supra,* and the use of the words "any person who shall give money or any other thing", and the word "purchased" in Section 359, *supra.*

Mid-Atlantic Coca-Cola Bottling Company, Inc., a franchise corporation (here designated Appellant) instituted a civil action for declaratory judgment [1] on diversity grounds [2] against Chen, Walsh and Tecler, a partnership, and John Burgess Walsh, Jr., William James Chen and Kenneth B. Tecler (here designated Appellees) seeking a declaration that a promotional plan entitled "Summer of Fun" conducted by Appellant was not a lottery within the meaning of Section 356, et seq. of Article 27 of the Annotated Code of Maryland and that there was no basis in law for entitlement of the Appellees to the sum of $31,200.00 claimed under Section 359 of that Article.

The Appellees filed an answer and counterclaim seeking declaratory judgment that the promotional plan was a prohibited lottery and seeking judgment in the amount of $31,200.00.

In 1969 [3] the Legislature of Maryland had enacted Section 369A of Code Article 27 that read in appropriate part as follows:

"(b) A retail establishment regulated or licensed pursuant to the provisions contained in Article 56 may not use any game, contests, lottery or other scheme or device, whereby a person or persons may receive gifts, prizes or gratuities as determined by chance for the purpose of promoting, furthering or advertising the sale of any product or service of whatsoever nature or kind. The fact that no purchase is required in order to participate in the

---

1. 28 U.S.C., Section 2201 and 2202.
2. 28 U.S.C., Section 1332.
3. Passed as Ch. 20 of the Regular Session of 1969; vetoed by the Governor but passed over his veto at the Special Session of December 1969 (its effective date postponed to June 1, 1970 by the provisions of Article II, Section 17 of the Constitution of Maryland).

game, contest, lottery or scheme does not exclude the game, contest, lottery or scheme from the provisions of this section.

(2) This section may not be construed as preventing any nonfranchise retail merchant from giving away any prize or prizes by the act of drawing of a name or names if no purchase or consideration is required to qualify for the prize or prizes."

The above section was repealed in the entirety by Chapter 160 Laws of Maryland 1980.

The facts of this case, hereafter recited, will make quite plain that the subject advertising promotion plan of Mid-Atlantic (a franchised operator) would have been in violation of the above section. The repeal of Section 369A removed that impediment to the legality of the subject enterprise and leaves for our consideration the issue whether the project contravenes Article III, Section 36 of the Constitution of Maryland and Article 27, Section 356 of the Annotated Code of Maryland.

## THE FACTS

Subsequent to the repeal of Section 369A of Article 27, Mid-Atlantic decided to conduct an advertising promotion. Mid-Atlantic is a franchised bottler of and distributor of soft drink products manufactured by The Coca-Cola Company and others. Between the beginning of June and October 31, 1981, Mid-Atlantic sponsored the "Summer of Fun" promotion as an advertising strategy to increase sales by offering prizes awarded on the basis of chance. Mid-Atlantic ran the promotion in several states, including the State of Maryland. The promotion was heavily advertised to retail outlets in terms of its potential for increasing store traffic and thereby increasing sales of Coca-Cola products, and perhaps other store merchandise.

At all relevant times during the Summer of Fun promotion, Mid-Atlantic sponsored and conducted an "under the crown" promotion whereby each gold Summer of Fun bottle cap carried a cap liner with one of six words "Have a Coke and a Smile" or was marked "Instant Winner". If a person collected all six words "Have a Coke and a Smile", the person won a Summer of Fun package worth $1,500.00. Prizes were also awarded to persons who collected "Instant Winner" cap liners. The odds of winning a prize varied between 25-1 and 5,000,000-1.

Mid-Atlantic provided various alternative means of entering the Summer of Fun contest. Gold Summer of Fun caps could be obtained by purchasing Coke, Tab or Sprite in 6 and 16 oz. returnable bottles or Mello-Yello, Coke, Tab, or Sprite in 16 oz. non-returnable and 2-liter bottles.

Free caps could be obtained by: (1) mailing a request to the address stated in the Official Rules and provided on other point-of-sale materials; (2) calling a toll-free telephone number provided on advertising and point-of-sale materials; or (3) visiting or writing directly to a Mid-Atlantic bottling plant. One request per person per day for free caps was permitted under the Official Rules. Six free caps were provided per request. Free caps carried the same odds as did caps obtained by purchasing soft drinks.

The availability of free caps was widely publicized. Among the various steps Mid-Atlantic took to insure that consumers were informed of the availability of free caps, Mid-Atlantic incuded the mailing address or toll free telephone number for free caps on its Official Rules and other point-of-sale materials. Mid-Atlantic circulated among its employees information to be distributed to consumers regarding free caps. Mid-Atlantic actually distributed, either directly or through its agent, Jay Advertising, a substantial number of free caps during the promotion.

Jay Advertising distributed over 42,000 free caps to persons who requested caps by writing to the address provided on the Official Rules. Free caps also were distributed to persons who directly wrote to or visited

Mid-Atlantic bottling and distribution facilities. Free caps were distributed to Maryland residents. The Baltimore Sales Center alone distributed 2400 free caps to Maryland residents who wrote directly to or visited the Center.

Although the public was advised that no purchase was necessary to win, all of the advertising suggested that the consumer "have a Coke", or "open a Coke and win a summer full of fun", or otherwise consume the Appellant's product. Many more caps came from purchased drinks than were distributed free. The promotion was funded as part of Mid-Atlantic's overall annual marketing budget which was developed independently of the pricing of Mid-Atlantic's products. Prices of soft drinks involved in the promotion were not raised to cover the costs of the promotion. Nor were the promotion costs reflected in any other way in the soft drink prices. Appellees purchased 624 bottles of soft drinks and claim entitlement to a civil penalty of Fifty Dollars ($50.00) per bottle or a total of $31,200.00 pursuant to Section 359.

Although the precise questions here presented have not been the subjects of appellate consideration in Maryland, the decisions of this Court have made plain that the essential elements of lottery are *consideration, chance* and *prize* and that the element of *consideration* requires *the payment of money or other thing of value by the purchaser to the lottery sponsor for the opportunity to win a prize awarded by chance.*

We feel that the plain language of Sections 356 and 359 demonstrates that the "Summer of Fun" program is not a lottery within the meaning of Section 356.

We noted infra that Section 356 provides *inter alia* that "[n]o person shall *sell any lottery ticket* in this State" and that Section 359 provides *inter alia* that its penalty provisions will benefit only "any person *who shall give money or any other thing for any lottery ticket,* certificate, or any other device."

In *Ballock v. State,* 73 Md. 1 (1890), this Court quoted with approval the language of *Hull v. Ruggles,* 56 N.Y. 424, that

*"where a pecuniary consideration is paid* [for a lottery ticket] and it is determined by lot or chance, according to some scheme held out to the public, what and how much he who pays the money is to receive for it, that is a lottery." (Emphasis added) (at page 6) [4]

In *Long v. State,* 74 Md. 565, 569-70 (1891), this Court discussed several definitions of lottery as follows:

"In *Hull v. Ruggles,* 56 N.Y. 424, the exigency of the case required the court to determine and define what is a lottery, and they laid down this definition: 'Where a pecuniary consideration is paid, and it is determined by lot or chance, according to some scheme held out to the public, what and how much he who pays the money is to have for it, that is a lottery.' Worcester's definition is: 'A game of hazard in which small sums are ventured for the chance of obtaining greater value.' And the definition adopted by the State in this case is not materially different from the above. 'Any scheme for the distribution of prizes by lot, or which one on paying money to another obtains a token, which entitles him to receive a larger value or nothing as some formula of chance may determine, is a lottery.' In one respect we think all of these definitions are too narrow to cover some of the modern devices resorted to in order to evade the lottery laws, and that whether the consideration, paid or given for the token, or chance to win something, generally called a 'prize', consists of money or any other thing of value makes no difference.

An examination of the many cases on this subject will show that it is very difficult, if not impossible, for the most ingenious and subtle mind to devise any

---

4. In *Ballock* the accused sold an Austrian Government Bond in the principal sum of 100 gulden (Austrian value) due after thirty years but, subject to drawings which would increase the principal sum of some of the bonds from 200 to 30,000 gulders and would decrease the time of repayment of some of the bonds to as little as one year.

scheme or plan, short of a gratuitous distribution of property, which has not been held by the courts of this country to be in violation of the lottery or gaming laws in force in the various States of the Union.

In *Yellow-Stone Kit v. State,* 88 Ala. 196, (1888,) the court uses this language: '*If the distribution is a pure gift or bounty, and not in name or pretense merely, which is designed to evade the law, — if it be entirely unsupported by any valuable consideration moving from the taker, — there is nothing in this mode of conferring it which is violative of the policy of our statutes condemning lotteries or gaming.*'

It is apparent, however, that the giving away of property without consideration, whether by lot or otherwise is not in itself an evil, and certainly not such an evil as requires prohibition by law at the present day." (Emphasis added)

In *Shelton v. State,* 198 Md. 405, 410-11 (1951), this Court, adopting language used in *Forte v. United States,* 65 App. D.C. 355, 83 F.2d 612 (1936) said: "The fundamental point is that in each case there is the offering of a prize, *the giving of a consideration for an opportunity to win the prize,* and the awarding of the prize by chance." (Emphasis added) See also: *Silbert v. State,* 12 Md. App. 516, 532 (1971).

We had observed in *Long v. State, supra,* that "An examination of the many cases on this subject will show that it is very difficult, if not impossible, for the most ingenious and subtle mind to devise any scheme or plan, short of a gratuitous distribution of property, which has not been held by the courts of this country to be in violation of the lottery or gaming laws in force in the various States of the Union." (p. 570 of 74 Md.)

We had noted, however, in *Bender v. Arundel Arena,* 248 Md. 181, 189 (1967) that most "states take the view that their constitutional and legislative provisions use the term

'lottery' in its generic sense; other states have given the term a more restricted, precise and technical meaning. Maryland would seem always to have chosen the latter course."

"In essentially the same form as they now are, the 'Lottery' laws (§§ 356 to 371 of Art. 27) have been on the books since long before the first Code, that of 1860. Officials and courts in Maryland appear to have considered that the lottery laws covered schemes for awarding a prize by lot or chance in which the only direct or personal participation by the seeker of the prize *is his purchase of a ticket* or its equivalent".[5]

We believe that the words "sell any lottery ticket"; "purchase" and "give money or other thing for any lottery ticket" conjunctively compel the conclusion that lottery's essential element of consideration is absent when, as here, there is no money or other thing of value given or required to be given for the opportunity to receive an award determined by chance. Otherwise stated, where, as here, the price for the purchase of the appellant's product is constant before, during and at the termination of the promotion, the fact that some of its purchasers (or non-purchasers) may receive a prize awarded on the basis of chance does not violate the provisions of the Constitution; *Bender v. Arundel Arena,* 248 Md. 181, 195 or of Article 27, Section 356 *Ballock v. State; Long v. State; Shelton v. State,* all *supra.*

The prizes are, in short, "gift[s] entirely unsupported by any valuable consideration moving from the taker", *Long v. State, supra; Yellow-Stone Kit v. State,* 88 Ala. 196 (1888). The distribution of such gifts by chance is not in violation of Section 356. *Long v. State, supra.*

With the repeal of Section 369A of Article 27 (1979 Code) by Chapter 160, Maryland Laws 1980, we perceive no subsisting constitutional or statutory prohibition against the distribution of gifts, prizes or gratuities by chance when

---

**5.** The wide ranging differences in the viewpoint of the several States is discussed in 29 ALR 3d 888-926 "Annotation: Promotion Schemes of Retail Stores As Criminal Offense Under Anti-Gambling Laws."

no consideration of money or other thing of value is given or required to be given by the taker for the right to receive the same.

For the reasons stated we answer Certified Question 1 "No," and answer Certified Question 2 "No."

> *Questions of law answered as herein set forth; costs to be divided equally between the parties in accordance with Annotated Code of Maryland, Courts and Judicial Proceedings Article, Section 12-604.*