You have asked for our opinion whether a particular type of poker tournament falls within the criminal prohibition of gambling.
In our opinion, the type of poker tournaments that you describe does not involve illegal gambling so long as the participants do not pay any money or other valuable consideration, directly or indirectly, in order to participate in the tournaments at any level.
 I Background
You state that a poker tournament takes place at a local tavern. Players do not pay any money to enter the tournament. There is no requirement that a player make a purchase at the tavern — e.g., purchase a drink — in order to play. As the games are played, the players accumulate points. The points are not redeemable as money. However, players who accumulate a certain number of points qualify for other tournaments at which prizes are awarded to the winners. Eventually, a winner of one of the later tournaments qualifies for trip to Las Vegas to play for the "ultimate title."
 II Analysis
Under State law, it is a crime to "bet, wager, or gamble." Annotated Code of Maryland, Criminal Law Article ("CR"), § 121-02(a). The general prohibition against gambling is subject to limited exceptions that vary according to jurisdiction, the organization conducting the activity, and the type of gambling.See, e.g., CR § 12-106, § 13-101 et seq.[1] The circumstances that you have described do not fit within any of these exceptions for "legal" gambling. Thus, the legality of the type of tournament that you describe turns on whether it is gambling.
The three main elements common to all gambling are "consideration, chance, and reward." Chesapeake Amusements, Inc.v. Riddle, 363 Md. 16, 24, 766 A.2d 1036 (2001).
Chance. It is well accepted that poker, despite elements of skill or judgment, is a game of chance that depends in substantial part on the hand a player is dealt and the placement of cards. See 38 Am.Jur.2d Gambling § 50. The Court of Appeals has recognized that playing cards — and, in particular, poker — may constitute gambling. State v. Crescent CitiesJaycees, 330 Md. 460, 471, 624 A.2d 955 (1993) (card game is a "gaming device" for purposes of the gambling laws); Emerson v.Townsend, 73 Md. 224, 20 A. 984 (1890) (debt for money loaned at poker game held void as money was loaned for gambling).
Reward. The element of reward may take the form of money or some other thing of value, such as chips convertible to money, or points convertible to some sort of prize. It is thus evident that a "reward" is offered in the circumstances you have described. In the initial games, the reward is the opportunity to advance to future tournaments. In the later games, the reward is a trip to Las Vegas.
Consideration. The remaining question is whether there is any consideration paid by a player for the chance to obtain the "reward." If there is no consideration, then these poker tournaments would not be illegal gambling prohibited by the State's criminal law. An essential element of gambling is absent when "there is no money or other thing of value given or required to be given for the opportunity to receive an award determined by chance." Mid-Atlantic Coca-Cola Bottling Co. v. Chen, Walsh Tecler, 296 Md. 99, 108, 460 A.2d 44 (1983).
Consideration may simply be money paid to participate in the game. However, consideration may also take many other forms.See, e.g., Opinion of the Texas Attorney General GA-0385,2005 WL 3568394 (2005) ($10 donation to charitable cause to enter "poker run" was consideration, even if it was not commingled with prize money); Opinion of the Texas Attorney General GA-0335,2005 WL 1464850 (2005) ("nominal fee" paid to enter Texas Hold `Em tournament was consideration even if house did not share proceeds); Opinion of the Kansas Attorney General No. 05-04,2005 WL 218294 (2005) (payment of cover charge to enter bar where poker tournament was held constituted consideration); Opinion of the Arkansas Attorney General No. 2004-357, 2005 WL 591228 (2004) (entrance fees for poker tournament or membership fees for poker league would supply element of consideration); Opinion of the Tennessee Attorney General No. 05-159, 2005 WL 2755423 (2005) (admission fee to Texas Hold `Em tournament was consideration).
Thus, if participants in the tournament you describe were required to pay a cover charge or to purchase a beverage as a prerequisite to participation in the poker tournament, the element of consideration would be present. If examination of all the circumstances reveals that no consideration is paid by the players, either directly or indirectly, to participate in a poker tournament, then the tournament would not constitute illegal gambling, even if prizes are awarded to the winners of the tournament.
 III Conclusion
In our opinion, the type of poker tournaments that you describe does not involve illegal gambling so long as the participants do not pay any money or other valuable consideration, directly or indirectly, in order to participate in the tournaments at any level.
Undoubtedly, those who sponsor poker tournaments will devise myriad variations for marketing them to potential venues, financing their cost, and attracting players. In some of those variations, the elements of consideration and reward will be present, but perhaps not immediately apparent. It is a question of fact for determination by the State's Attorney and ultimately a court whether the elements of reward and consideration are present in particular circumstances.
J. Joseph Curran, Jr. Attorney General
Robert N. McDonald Chief Counsel Opinions and Advice
[1] For example, in certain counties, a "qualified organization" such as a civic or charitable organization, may conduct a gaming event for its exclusive benefit, subject to various constraints. CR § 13-201 et seq.; State v. CrescentCities Jaycees, 330 Md. 460, 624 A.2d 955 (1993); see also
74 Opinions of the Attorney General 157 (1989); 70 Opinions ofthe Attorney General 107 (1985). Certain events — i.e.,
carnivals and bazaars — may even include card games, although such events may only occur on an occasional and non-recurring basis. See Letter of Attorney General J. Joseph Curran, Jr., to Senator Martin G. Madden (December 10, 1997). *Page 68