The Honorable Lona Horn McCastlain Prosecuting Attorney Twenty-Third Judicial District 301 N. Center Street, Suite 301 Lonoke, AR 72086
Dear Ms. McCastlain:
I am writing in response to your request for an opinion on the following:
 A company has contacted our office for an opinion as to the legality of their promotional phone card. The phone card cost[s] $1.00 for 4 minutes and will have a game piece attached. The game piece is a sweepstakes entry. The company offers a "Free Alternative Method of Entry" whereby the consumer can enter to win without buying the phone card. A machine will not be used to dispense the phone cards. According to the company, the promotional game is to promote to potential customers the various types of phone cards, rates and plans the company has to offer. Does this phone card and the attached game piece violate Arkansas laws related to gambling or a lottery? I am attaching the information regarding these phone cards by the company to our office.
The information enclosed did not contain any sample cards, but rather fax machine quality photocopies of the fronts of a variety of cards offered by the company. Prizes offered range from $1.00 to $1,000.00 depending on which variety of card is being sold. Based on the information attached to your request for an opinion, it appears that the grocery stores or convenience stores dispensing the "emergency long-distance phone cards" will pay the prizes directly to a customer who receives a winning game piece. It is not specified, and the quality of the copies do not allow me to discern, whether the "promotional scheme" includes scratch-off portions on the telephone cards, "pull tab" style reveals, or some other mechanism to reveal whether a customer has won a cash prize. You have also attached information provided to the potential vending locations specifying how much each roll of telephone cards costs, how much will be paid out in "promotional" cash prizes, and how much profit will be left to the vendor.
RESPONSE
In my opinion, whether this "promotional scheme" violates the constitutional prohibition on lotteries or the statutory prohibition on gambling can only be resolved by a finder of fact who determines whether consideration for the opportunity to win a prize is part of the cost of the "emergency phone card."
While inquiries regarding whether a particular scheme or plan is a lottery or illegal gambling are similar, they are distinct inquiries and I will address them in turn.
Constitutional Prohibition on Lotteries
I will initially address the prohibition on lotteries found in the Arkansas Constitution. This Arkansas Constitution specifically states, "No lottery shall be authorized by the State, nor shall the sale of lottery tickets be allowed." Ark. Const. art. 19, § 14. The Arkansas Supreme Court has defined a "lottery" as "a species of gaming which may be defined as a scheme for the distribution of prizes by chance among persons who have paid, or agreed to pay, a valuable consideration for the chance to obtain a prize." See Scott v. Dunaway, 228 Ark. 943,311 S.W.2d 305 (1958); see also Op. Att'y Gen. 2004-357. As I explained in Op. Att'y Gen. 2005-034, this creates a three prong test where the initial question is whether consideration is paid to participate. The second question is whether the game is controlled by chance such that winning is not influenced by the skill or judgment of those participating. The third question is whether a prize is awarded. If any of these questions is answered in the negative, the scheme will not be considered a lottery.Id. (citing Op. Att'y Gen. 86-599).
As I have previously stated, "[t]he question of whether any particular game possesses the above-listed elements of a lottery is entirely a question of fact." Op. Att'y Gen. 2004-155. I am thus neither authorized nor equipped to make a final determination as to whether a particular game would or would not be considered a lottery. Such questions of fact are best resolved by Prosecuting Attorneys or the judicial system. It appears evident from a review of the information provided, however, that the second and third prongs of a lottery are met in this situation. There is a random distribution of prizes based on which game piece attached to the telephone card is received. There is no skill involved in someone purchasing a card with a game piece that can effect the distribution of the prizes. See,e.g., Sun Light Prepaid Phonecard Co., Inc. v. State,360 S.C. 49, 600 S.E.2d 61 (20), cert. denied sub nom Phonecards R Us,Inc. v. South Carolina, 543 U.S. 1120 (Jan. 24, 2005) ("The computer that prints the [phone] card randomly generates winners on the cards."); and Mississippi Gaming Commission v. SixElectronic Video Gambling Devices, 792 So.2d 321 (Miss.Ct.App. 2001) ("The order of the cards on the roll determines the order of winners . . . the player is unaware of the order on the roll."). The controlling issue will thus be whether consideration exists.
Consideration for a lottery may be direct or indirect. Op. Att'y Gen. 2004-357. Direct consideration is simply expressly paying for a lottery ticket or other chance to win a prize. Direct consideration is not at issue in the situation you have described. Indirect consideration occurs when participants pay to participate in a lottery by purchasing something aside from a lottery ticket or other chance to win at an inflated price thereby paying a premium for the chance to win a prize. Id. For example, a "free bingo" game could still be a lottery when participants had to pay for a chair or space on a table to place the bingo cards. See Op. Att'y Gen. 93-364. Another example of indirect consideration is receiving bingo cards when purchasing a mint or plastic comb at inflated prices. Id. Despite receiving a product or item the participants were actually paying a premium for the opportunity to receive a prize and the items received were incidental to that purpose. See also Op. Att'y Gen.2004-357.
There are no Arkansas cases on point discussing what facts a court would analyze in determining whether indirect consideration for a lottery is being provided through a premium on goods or services. The Arkansas Supreme Court declined to reach the issue of whether a machine dispensing emergency phone cards and that allowed consumers a chance to win additional prizes was an illegal lottery in Pre-Paid Solution, Inc. v. City of LittleRock, 343 Ark. 317, 34 S.W.3d 360 (2001), because the court held that the dispensing machines at issue therein were prohibited as illegal gambling devices. One Pulaski County Circuit Court has found that phone cards with game pieces attached, but not dispensed by machines, were "legitimate commercial products" and that consideration was paid for those products so that the products and game pieces were neither gambling nor a lottery.Treasured Arts, Inc. v. Ark. Alcoholic Beverage Control Board,
No. CV 97-716, (1997 Circuit Court Pulaski County, Sixth Division). The court, however, did not expound on what factors were used to reach this decision or what evidence was presented.Id. The case was not appealed. Other courts have looked to the price charged in the market to determine whether the price of an emergency phone card with an attached game piece included a premium for the chance to win a prize. See, e.g., AmericanTreasures, Inc. v. State, N.C. App., 617 S.E.2d 346 (September 6, 2005) (relying on uncontroverted evidence introduced at trial that the price for emergency phone cards was "sufficiently compatible" with the value and utility of the phone cards to support a declaratory judgment that the phone cards were not an illegal lottery); Mississippi Gaming Commission v. SixElectronic Video Gambling Devices, 792 So.2d 231 (2001) (noting that absent some value paid for a gamble, there is no lottery and that evidence more compelling than that offered in MississippiGaming Commission v. Treasured Arts, Inc., infra, would be required to prove that the phone cards with attached gaming pieces sold over the counter were a lottery); Mississippi GamingCommission v. Treasured Arts, Inc., 699 So.2d 936 (1997) (concluding that the Gaming Commission had failed to put forth any admissible evidence to dispute Treasured Arts contention that the price paid for the emergency phone card did not include any consideration for the attached game piece and therefore held that the phone cards with the attached game pieces were not an illegal lottery); and Mid-Atlantic Coca-Cola Bottling Company, Inc. v.Chen, Walsh, Tecler, 296 Md. 99, 460 A.2d 44 (1983) (noting that a promotion offering prizes based on the random distribution of game pieces under the caps of soda bottles was funded from Mid-Atlantic's annual marketing budget, the prices of the soft drinks were not raised to cover the promotion, and the soft drink prices did not in any way reflect the promotional costs incurred). In making a determination of whether a particular activity is an illegal lottery, a court will likely look at the actual cost of the product being offered on the market compared to the price charged for this product or service with an attendant game piece or chance to win a prize.
I am unable to definitively answer the factually specific question of whether the product this company is offering, the prepaid phone card, is at a grossly inflated value to include the potential to win a prize. I will note, however, that a "Free Entry" method does not necessarily make the "promotional scheme" legal. The possibility of a free entry does not absolve the entire "promotional scheme" of potential violations of the Arkansas Constitution. One of my predecessors addressed, in the analogous bingo context, whether consideration exists where some individuals are allowed to participate for free. In Op. Att'y Gen. 91-162, my predecessor quoted the following language fromState ex rel. Bryant v. Razorback Room Inc., et al., No. 91-7596 (Pulaski County Chancery, 6th Div., September 29, 1992):
 All three elements of a lottery are present. The elements of prize and chance are not disputed. While the issue of consideration was disputed at trial, the evidence shows that the vast majority of bingo patrons in fact pay money in order to participate in the various games. The fact that these payments may be called donations is not, on this issue, significant. The defendants admit that if a significant portion of the bingo patrons chose to play for free, the bingo game would collapse. The game did not cease to be a lottery because some of the players were admitted to play for free, so long as others continued to pay for their chances. [citations omitted.] The presence of non-paying participants did not change the status of those who paid. If it is a lottery as to those who pay, it is necessarily a lottery to those who do not pay for their chances.
Id.[1]
In the context of "emergency phone cards," the Attorney General of at least one state has concluded that a free entry opportunity did not negate the element of consideration. In Tn. Op. Att'y Gen. 2002-089, an individual was required to mail an application form complete with a self-addressed stamped envelope to the company to receive a single free game piece. As noted in that opinion, the cost of two stamps was over two-thirds of the cost of purchasing a telephone card with the game piece and, while only one game piece was allowed per addressed request, an individual could buy as many "emergency telephone cards" as desired from a vending outlet. Combined with the fact that the post office box where these requests for free game pieces were mailed was only checked once per week and that there were remarkably few requests for free game pieces according to the company offering the phone cards, the Attorney General of Tennessee concluded that "the fact that a very few people may not pay to play does not negate the element of consideration in the case of the vast majority of players who do pay for a chance to win the game." Id.; see also, G.A. Carney, ltd. V. Brzeczek,117 Ill.App.3d 478, 453 N.E.2d 756 (1983) (holding that consideration did exist to support a finding of a lottery when the free alternate method of entry was "illusory" and "chimerical"); but see American Treasures, Inc. v. State, N.C. App., 617 S.E.2d 346 (September 6, 2005) (stating, in upholding a "promotional scheme" where game pieces for cash prizes were attached to emergency phone cards, that the free game pieces available by mail were an additional "reason supporting the validity of plaintiff's promotional scheme."). The specifics of the "Free Alternative Method of Entry" are not detailed and the factual circumstances surrounding this method must be considered when determining whether the scheme you describe is in violation of the lottery prohibition in the Arkansas Constitution.
Statutory Prohibition on Gambling
The determination of whether or not a particular scheme or situation is in violation of the Arkansas Code's prohibition on gambling is a factually specific determination that is properly made by a prosecuting attorney or court.
"Gambling" or "gaming" has been defined by the Arkansas Supreme Court as "the risking of money between two or more persons on a contest or chance of any kind, where one must be loser and the other gainer." Sharpe v. State, 350 Ark. 529, 88 S.W.3d 848
(2002) (quoting Portis v. State, 27 Ark. 360, (1872)); seealso Op. Att'y Gen. 2005-217. Section 5-66-101 of the Arkansas Code Annotated specifically addresses the proper construction of the gambling prohibition statutes stating:
 (a) In their construction of the statutes prohibiting gaming, the judges of the several courts of this state shall construe the statutes liberally, with a view of preventing persons from evading the penalty of the law by changing the name or the invention of new names or devices that now are, or may hereafter be, brought into practice, in any and in all kinds of gaming, and all general terms of descriptions shall be construed to have effect, and include all such games and devices as are not specially named.
 (b) In all cases in which construction is necessary, the construction shall be in favor of the prohibition and against the offender.
A.C.A. § 5-66-101(Repl. 2005).
Selling of Lottery Tickets
If the promotional scheme described above is a lottery for the purposes of the Arkansas Constitution, the selling of tickets for such a lottery is also illegal under A.C.A. § 5-66-118 (Repl. 2005). This section simply states that it is unlawful for any person to sell lottery tickets, maintain an office or other location for the sale of lottery tickets, possess any lottery tickets unless the ticket was vended in a state where a lottery is legal, and be financially interested, either directly or indirectly, in the sale of lottery tickets. A.C.A. § 5-66-118(a). An exemption to the provisions of this section exists for businesses that manufacture lottery tickets or similar devices for sale in states where lotteries are legal. Id. at (c)(1)(B) and (c)(2)(A). Again, it will be a question of fact as to whether the required elements of a lottery are present. As noted above, the element of consideration is the important element in this situation.
Gambling Devices
With respect to the prohibition against keeping or exhibiting gambling devices or gaming tables, A.C.A. § 5-66-104 states:
 Every person who shall set up, keep, or exhibit any gaming table or gambling device, commonly called A.B.C., E.O., roulette, rouge et noir, or any faro bank, or any other gaming table or gambling device, or bank of the like or similar kind, or of any other description although not herein named, be the name or denominations what it may, adapted, devised, or designed for the purpose of playing any game of chance, or at which any money or property may be won or lost, shall be deemed guilty of a misdemeanor . . .[.]
Id.[2]
"Device" is not expressly defined in the criminal prohibition on gambling. "Device" is defined in Blacks Law Dictionary as "2. A scheme to trick or deceive; a stratagem or artifice, as in the law of fraud."[3] Black's Law Dictionary 483 (8th Ed. 2004). Previous definitions of "device" in Black's Law Dictionary had described a device as "any result of design." Black's Law Dictionary 462 (7th Ed. 1999). In Sharp v. State, the Arkansas Supreme Court clarified the definition of a "gambling device" as follows:
 To be a prohibited gaming device, the device must be one that is adapted or designed for the purpose of playing a game of chance at which money or property may be won or lost. [Pre-Paid Solutions, Inc. v. City of Little Rock, 343 Ark. 317, 34 S.W.3d 360
(2001) (citation omitted)]. Where the machine is played to win or lose by hazard of chance, it is a gaming device. Pre-Paid Solution, supra [(citation omitted)].
350 Ark. 539, 534, 88 S.W.3d 848 (2002). Keeping with the above mentioned liberal interpretation in favor of prohibition expressed in A.C.A. § 5-66-101 and the language of A.C.A. §5-66-104 specifically prohibiting gambling devices no matter how they are devised in the future, "device" has been interpreted to include more than mechanical apparatuses. See Johnson v. State,101 Ark. 159, 141 S.W. 493 (1911) (as quoted in 26 GamingMachines, supra, holding that dice and a cloth pinned to the ground may be a prohibited gambling devices).
A device may be a prohibited gambling device by being either aper se gambling device or a gambling device by actual use. If something is a gambling device per se, the "mere possession of it is punishable" under this provision. State v. 26 GamingMachines, 356 Ark. 47, 52, 145 S.W.3d 368 (2004). The court has attempted to define a per se gaming device several times in the past century. In Rankin v. Mills Novelty Co., 182 Ark. 561,32 S.W.2d 161 (1930), the Arkansas Supreme Court held a machine to be an illegal gaming device because it was "adapted or designed for the purposes of playing any game of chance or at which any money or property may be won or lost" and because it induced the players to spend money on the machine for the chance to play a "symbolic game of baseball." Subsequently, the Arkansas Supreme Court clarified that two slot machines were illegal gaming devices despite one being used partly for amusement because the devices "only reasonable and profitable use . . . was a game of chance" even if there were no prizes awarded, Steed v. State,189 Ark. 389, 72 S.W.2d 542 (1934). Id. The Arkansas courts have specifically held that gambling devices per se include slot machines, Howell v. State, 184 Ark. 109, 40 S.W.2d 782
(1931), video poker machines, Sharpe, supra, and video slot machines, id.
Additionally, the court has recognized that devices adapted andactually used for gambling or gaming run afoul of A.C.A. §5-66-104. State v. 26 Gaming Machines, supra; see alsoAlbright v. Muncrief, 206 Ark. 319, 176 S.W.2d 426 (1943) (teletype machines were not gambling devices per se but became gambling devices when used for gambling purposes); and State v.Saunders, 86 Ark. 353 (1908) (device need not be intendedsolely for gambling purposes to fall within the Arkansas prohibitions against gambling or gaming devices). For example, a pinball machine is not a per se gambling device but became a gambling device by actual use because the owner of the game would pay players for each free game won on the machine. Bostic v.City of Little Rock, 241 Ark. 671, 409 S.W.2d 825 (1966). The Arkansas Supreme Court recently reiterated that where the devices in question are not gambling devices per se, there must be evidence presented that the devices in question are actually used for gambling before a violation will be upheld. 26 GamingMachines, supra. Citing Blankenship v. State, 258 Ark. 535,527 S.W.2d 636 (1975), the 26 Gaming Machines court noted that that a ledger, three sheets of yellow paper with tickets wrapped inside of them, newspapers containing racing forms, a reserve of tickets, telephones, and checks were not gambling devices by use because there was no proof that the owner "ever made a specific bet." Id.
I am unable to determine whether any of the devices to be used would be per se gambling devices or gambling devices by actual use from the facts recounted in your request for an opinion. The Arkansas Courts have examined each device separately to determine whether the device is a gambling device per se. While certain devices, noted above are clearly per se gambling devices under A.C.A. § 5-66-104, the Arkansas Supreme Court has not specifically held that a roll of "emergency phone cards" with attached game pieces is a gambling device per se. But see SunLight, supra at 64 (noting that a roll of emergency phone cards with attached game pieces was an illegal gaming device independent of the dispensing mechanism). Furthermore, a factually specific determination is required when analyzing whether something is a gambling device by actual use. I am neither authorized nor equipped to under factually specific determinations such as this.
Whether the "promotional scheme" and the items used are designed to entice individuals to spend money not for the product but for the chance to win a prize is also a question of fact I cannot address. Furthermore, whether there is a "reasonable and profitable use" of the phone cards and "promotional scheme" aside from playing a game of chance is likewise a question of fact that I am unable to address. I cannot make a determination on the items to be used in the proposed business venture absent a specific factual review, a task that this office is not authorized to conduct in the context of an official Attorney General's Opinion.
Promotional Advertising Schemes
One final point requires discussion. The memorandum in support of the legality of the "promotional scheme" attached to your request for an opinion analogizes the scheme at issue to the free promotional schemes used by soda manufacturers and fast food restaurants that distribute prizes to customers through random game pieces attached to the soda or fast food products.
The Arkansas Code does provide for advertising schemes that offer free prizes stating:
 The method of business advertising conducted in this state by the giving away of prizes consisting of money or other thing of value where no payment of money or other thing of value is required of participants in the awards, whether the advertising plan is entitled "Bank Night", "Buck Night", or any other name whatsoever, is declared to be a legal form of advertising.
A.C.A. § 4-70-102 (Repl. 2001).
In my opinion, this provision was enacted with the intent of allowing promotional advertising for products that are sold independent of a "promotional scheme" and that cost the same before, during, and after such a promotional advertising method. As discussed above, indirect consideration for a lottery or for gambling may be achieved through payment of inflated prices for goods or services as a cover for payment for a lottery ticket. A chance to win a promotional prize when purchasing a good or service that is priced the same with or without the promotional advertising scheme may well preclude any indirect consideration for the prize.
At least three cases have discussed or mentioned issues relating to whether a "promotional scheme" involving phonecards is the same or similar to promotional schemes by soda retailers or fast-food companies that offer prizes distributed by chance. In determining whether a free method of entry to the "promotional scheme" attached to emergency phone cards, dispensed by machine, precluded the scheme from being gambling, the Mississippi Court of Appeals noted the relevancy of the fact that a great number of unused "emergency phone cards" were discarded without being used once no prize was won. Six Electronic Gaming Machines, supra.
The court contrasted this with other promotional schemes by noting that "large numbers of cans of colas sold by vending machines likely are not opened solely to determine if a prize has been won, then discarded with the contents unconsumed." Id.
This case is distinguishable from the situation you have described because it addressed a machine that dispensed phone cards with a promotional game attached, similar to Pre-Paid,supra, but the analysis provided may inform a decision by a Prosecuting Attorney or judge. The Supreme Court of South Carolina noted that the "sweepstakes promotion" attached to emergency phone cards "was set to run for 22 months [but that] the long distance service on the phone cards was valid only for six months from the time the first phone card pin number was used." Sun Light, supra (emphasis in original). Once determining that the roll of phone cards with the attached game pieces as well as the dispensing machines were illegal gambling devices, the Sun Light court summarily dismissed the contention that the "sweepstakes promotion" was a legitimate promotional advertisement. Id. at fn. 6. The Attorney General of Tennessee described the difference between a telephone card with an attached game piece under a similar "promotional scheme" and other limited promotional giveaways as follows:
 Thus, the activity at issue here is fundamentally different from limited duration promotional sweepstakes occasionally used by fast food chains, or in connection with candy, sodas, miscellaneous food or other established retail products. For example, in upholding the legality of Coca-Cola bottle cap contest that did not require a purchase, the court specifically noted that the price of the product which could be purchased with the "free" game caps was constant before, during, and at the termination of the promotion. Mid-Atlantic Coca-Cola Bottling Co., Inc. v. Chen, Walsh Tecler, 460 A.2d 44, 47
(Md.App. 1983).
Tn. Op. Att'y Gen. 02-089 at fn. 5.
Whether the sale of phone cards with attached game pieces described in your request for an opinion is a promotional advertising scheme contemplated by A.C.A. § 4-70-102 is question of fact that will depend again, on whether indirect consideration exists for the chance to win a prize.
In summary, therefore, the issue of whether the particular phone cards about which you have inquired would violate Arkansas lottery and gambling prohibitions will depend upon the attendant facts. I am not a finder of fact. The critical inquiry is whether consideration, direct or indirect, exists. This question of fact must be determined by the local prosecutor, after an analysis of the relevant facts, or if necessary by the judicial branch. I hope that the foregoing is helpful in addressing the issue.
The foregoing opinion was prepared by Assistant Attorney General Joel DiPippa, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JMD/cyh
[1] The Razorback Room case was not appealed and is thus controlling only in Pulaski County. The logic provided, however, is persuasive.
[2] Arkansas Code Annotated § 5-66-103 also prohibits an individual from "setting up, keeping, or exhibiting any gambling device." The discussion of the distinct offense in A.C.A. §5-66-104 should be read to apply to the similar language found in A.C.A. § 5-66-103.
[3] The first definition of "device" provided in Black's Law Dictionary relates to the law of patents and, therefore, is not applicable to this discussion.