# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2018AP947 |

| | |
|---|---|
| COMPLETE TITLE: | Quick Charge Kiosk LLC and Jeremy Hahn, Plaintiffs-Appellants-Petitioners, v. Josh Kaul, in his official capacity as Attorney General, Defendant-Respondent. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 388 Wis. 2d 525,934 N.W.2d 18
PDC No:2019 WI App 51 - Published

| | |
|---|---|
| OPINION FILED: | June 12, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 27, 2020 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | John J. DiMotto |

JUSTICES:

HAGEDORN, J., delivered the majority opinion for a unanimous Court.

NOT PARTICIPATING:

ATTORNEYS:

For the plaintiffs-appellants-petitioners, there were briefs filed by *Ohioma Emil Ovbiagele, Samantha Huddleston,* and *OVB Law & Consulting, S.C.*, Milwaukee. There was an oral argument by *Ohioma Emil Ovbiagele.*

For the defendant-respondent, there was a brief filed by *Colin T. Roth*, assistant attorney general; with whom on the brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *Colin T. Roth.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2018AP947
(L.C. No. 2016CV6655)

STATE OF WISCONSIN          :        IN SUPREME COURT

**Quick Charge Kiosk LLC and Jeremy Hahn,**

      **Plaintiffs-Appellants-Petitioners,**

    **v.**

**Josh Kaul, in his official capacity as Attorney General,**

      **Defendant-Respondent.**

**FILED**

**JUN 12, 2020**

Sheila T. Reiff
Clerk of Supreme Court

HAGEDORN, J., delivered the majority opinion for a unanimous Court.

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 BRIAN HAGEDORN, J. Quick Charge Kiosk LLC is the commercial owner of kiosks that enable customers to pay for an opportunity to win (or lose) money through a video game based on chance. After its kiosks were deemed illegal gambling machines by the attorney general and law enforcement, Quick Charge and its owner brought this declaratory judgment action.

¶2 Quick Charge asserts that its kiosks are not gambling machines because they do not satisfy the consideration

requirement under the gambling machine definition in Wis. Stat. § 945.01(3) (2017-18).[1] Quick Charge points to the definition of consideration for lotteries under § 945.01(5) and an exception from that definition for "in-pack chance promotions" under Wis. Stat. § 100.16(2). This same definition and exception should apply to gambling machines, Quick Charge contends, suggesting its kiosks are legally compliant in-pack chance promotions. Further, Quick Charge argues there is no consideration even if the ordinary legal definition of consideration applies because a free play option is available. We disagree with these arguments.

¶3 While the lottery statute expressly excludes in-pack chance promotions from its definition of consideration, the gambling machine statute does not. The logical implication of this textual distinction is that meeting the requirements of an in-pack chance promotion does not exempt a mechanical device from the consequences of being an illegal gambling machine. Moreover, consideration is present here because the kiosks can be used exactly like a standard gambling machine notwithstanding a free play option also being available. That is, customers can pay for an opportunity to obtain something of value by chance. We therefore hold that Quick Charge's kiosks meet the definition of a gambling machine under Wis. Stat. § 945.01(3).

---

[1] All subsequent references to the Wisconsin Statutes are to the 2017-18 version.

## I.  BACKGROUND

¶4    Jeremy Hahn owns Quick Charge Kiosk LLC, a company that places what Quick Charge describes as cellphone charging kiosks in various convenience stores and gas stations throughout the state.  Resembling in Hahn's words a "penny video poker game," Quick Charge constructs the kiosks by modifying standard gambling machine equipment purchased from third parties to enable a cellphone charging functionality.

¶5    A customer who puts money into a Quick Charge kiosk receives two potential benefits.  First, the kiosk gives the customer credits to play a video game on the kiosk's screen with a chance to win a cash prize.  For every dollar inserted, a customer receives 100 credits.  Customers wager the credits throughout different rounds and either win or lose those credits based on the game's results.  These results are determined by a random number generator.  If all credits are not lost, the customer can print out a ticket representing his or her winnings.  That ticket is redeemable for cash from the store where the kiosk is located.  If all credits are lost, the customer receives no cash prize and cannot continue playing the video game without inserting more money.  The kiosks' video game pays out around 65% of all money inserted.

¶6    Inserting money into a kiosk also allows a customer to charge a cellphone using the kiosk's attached charging cord. Charging time is based on the amount deposited——$1 earns you one minute of charging time.  Quick Charge has two different styles of kiosks, and their cellphone charging functionalities work

3

differently. If customers use a "Quick Charge" kiosk only for charging a phone, they can redeem the unused video game credits for cash after the charging time expires——100 unused credits equals $1. In other words, charging can be done at no net cost. A "Pow'R Up" kiosk, on the other hand, requires the customer to play the video game at least once in order to redeem any credits.

¶7 Soon after these kiosks debuted in retail locations, the Attorney General opined that they were illegal gambling machines as defined by Wis. Stat. § 945.01(3). Several kiosks were then seized by law enforcement for violating the statutory prohibition on gambling machines.

¶8 Quick Charge, along with its owner, responded with a declaratory judgment action naming the Attorney General in his official capacity. It sought a declaration that the kiosks complied with the in-pack chance promotion exception under Wis. Stat. § 100.16(2) and thus were not in violation of any gambling laws under Wis. Stat. ch. 945. The circuit court granted summary judgment in the Attorney General's favor, declaring the kiosks illegal gambling machines.[2] The court of appeals affirmed that decision, Quick Charge Kiosk LLC v. Kaul, 2019 WI App 51, ¶1, 388 Wis. 2d 525, 934 N.W.2d 18, and we granted Quick Charge's petition for review.

---

[2] The Honorable John J. DiMotto, Milwaukee County Circuit Court, presided.

4

## II. STANDARD OF REVIEW

¶9 We review a summary judgment decision de novo, applying the same methodology as the circuit court but benefitting from the analyses of both courts below. Eichenseer v. Madison-Dane Cty. Tavern League, Inc., 2008 WI 38, ¶30, 308 Wis. 2d 684, 748 N.W.2d 154. Summary judgment is appropriate when there is no genuine issue of material fact and "the moving party is entitled to judgment as a matter of law." Wis. Stat. § 802.08(2). The parties agree on the material facts, but dispute questions of statutory interpretation and application. These are issues of law we review independently. Heritage Farms, Inc. v. Markel Ins. Co., 2012 WI 26, ¶24, 339 Wis. 2d 125, 810 N.W.2d 465.

## III. DISCUSSION

¶10 Quick Charge disputes that its kiosks are illegal gambling machines under Wis. Stat. § 945.01(3)(a). The statute defines a gambling machine as "[1] a contrivance [2] which for a consideration [3] affords the player an opportunity to obtain something of value, [4] the award of which is determined by chance, even though accompanied by some skill and whether or not

the prize is automatically paid by the machine." § 945.01(3)(a).[3]

¶11 Of these four criteria, Quick Charge contests only the consideration requirement.[4] It does so on two grounds. First, Quick Charge looks to the lottery subsection which, along with the gambling machine definition, is found in Wis. Stat. § 945.01. The lottery subsection contains a statutory definition of consideration, and includes an exception from that definition for "in-pack chance promotions" under Wis. Stat. § 100.16(2). § 945.01(5)(b)2.g. Quick Charge argues that this same definition and exception should apply to the consideration requirement for gambling machines and that its kiosks are in-pack chance promotions under § 100.16(2). Second, Quick Charge asserts that its kiosks do not meet the consideration requirement for gambling machines anyway because a free play option is available.

---

[3] While Wis. Stat. § 945.01(3) defines a gambling machine, other statutes set forth the applicable criminal penalties. For example, Wis. Stat. § 945.03(1m)(e) dictates that anyone who "[s]ets up for use for the purpose of gambling or collects the proceeds of any gambling machine" is guilty of a felony. And anyone who "[p]ermits a gambling machine to be set up for use for the purpose of gambling in a place under his or her control" is guilty of a misdemeanor under Wis. Stat. § 945.04(1m)(b).

[4] As for the other elements, it is clear that Quick Charge's kiosks are contrivances (mechanical devices) that afford an opportunity to obtain something of value by chance.

Wisconsin Stat. § 945.01(3)(b) also provides three exceptions to the gambling machine definition. Quick Charge does not argue that its kiosks meet any of them.

¶12 Wisconsin Stat. § 945.01(5)(a) defines a lottery as "[1] an enterprise [2] wherein for a consideration [3] the participants are given an opportunity to win a prize, [4] the award of which is determined by chance, even though accompanied by some skill." On its face, this definition is virtually identical to the gambling machine definition except for its application to an "enterprise" rather than to a "contrivance." However, the different subsections contain one other notable distinction. Unlike gambling machines under § 945.01(3), the lottery subsection specifically defines "consideration" and expressly contains nine exceptions from that definition. See § 945.01(5)(b).[5] One of those exceptions is "[u]sing a chance promotion exempt under s. 100.16(2)." § 945.01(5)(b)2.g.

¶13 Wisconsin Stat. § 100.16, found within a chapter addressing marketing and trade practices, sets forth a separate albeit related prohibition. Subsection (1) prohibits selling items with the representation or pretense that a prize might be included with the purchase (i.e., a prize sale). § 100.16(1). Subsection (2) then states that "[t]his section"——that is, § 100.16 and its proscription of prize sales——"does not apply to

---

[5] Wisconsin Stat. § 945.01(5)(b)1. provides:

"Consideration" in this subsection means anything which is a commercial or financial advantage to the promoter or a disadvantage to any participant, but does not include any advantage to the promoter or disadvantage to any participant caused when any participant learns from newspapers, magazines and other periodicals, radio or television where to send the participant's name and address to the promoter.

7

an in-pack chance promotion," followed by seven criteria that must be met to qualify for this exception. § 100.16(2).[6]  Thus,

_____

[6] Wisconsin Stat. § 100.16 provides:

(1) No person shall sell or offer to sell anything by the representation or pretense that a sum of money or something of value, which is uncertain or concealed, is enclosed within or may be found with or named upon the thing sold, or that will be given to the purchaser in addition to the thing sold, or by any representation, pretense or device by which the purchaser is informed or induced to believe that money or something else of value may be won or drawn by chance by reason of the sale.

(2) This section does not apply to an in-pack chance promotion if all of the following are met:

(a) Participation is available, free and without purchase of the package, from the retailer or by mail or toll-free telephone request to the sponsor for entry or for a game piece.

(b) The label of the promotional package and any related advertising clearly states any method of participation and the scheduled termination date of the promotion.

(c) The sponsor on request provides a retailer with a supply of entry forms or game pieces adequate to permit free participation in the promotion by the retailer's customers.

(d) The sponsor does not misrepresent a participant's chances of winning any prize.

(e) The sponsor randomly distributes all game pieces and maintains records of random distribution for at least one year after the termination date of the promotion.

(f) All prizes are randomly awarded if game pieces are not used in the promotion.

(g) The sponsor provides on request of a state agency a record of the names and addresses of all winners of

8

an in-pack chance promotion is not a standalone provision. It is a statutory exception to an illegal prize sale. And, connecting this with Quick Charge's argument here, the legislature has also provided that an in-pack chance promotion is an exception to what might otherwise be considered an illegal lottery. Wis. Stat. § 945.01(5)(b)2.g.

¶14 Quick Charge contends its kiosks are in-pack chance promotions under Wis. Stat. § 100.16(2). If so, they lack consideration as defined for lotteries. The crux of Quick Charge's theory is that the statutory definition of consideration for lotteries should also be used for gambling machines. If the same definition is used and the kiosks are in-pack chance promotions, then the kiosks are not illegal gambling machines. While creative, this theory runs headlong into basic principles of statutory interpretation.

¶15 It is true that when a particular term is used throughout a chapter, we usually understand it to carry the same meaning each time. Bank Mut. v. S.J. Constr., Inc., 2010 WI 74, ¶31, 326 Wis. 2d 521, 785 N.W.2d 462. But this principle only applies "absent textual or structural clues to the contrary." State v. Cox, 2018 WI 67, ¶17, 382 Wis. 2d 338, 913 N.W.2d 780 (citation omitted). Here, contrary clues abound.

¶16 While the legislature expressly defined "consideration" for purposes of a lottery, exceptions and all,

---

prizes valued at $100 or more, if the request is made within one year after the termination date of the promotion.

9

it did not do the same for gambling machines. And the separate gambling provisions are found in the exact same section of the Wisconsin Statutes. To make its point crystal clear, the legislature provided that the lottery provision's definition of consideration, including its exclusion of in-pack chance promotions, applies only to "this subsection," meaning lotteries under Wis. Stat. § 945.01(5). Nothing in the gambling machine provision cross-references lotteries under § 945.01(5) or in-pack chance promotions under Wis. Stat. § 100.16(2).

¶17 This textual language is far more than a tip; it is a dead giveaway. The legislature explicitly excluded in-pack chance promotions from the definition of an illegal lottery, but not an illegal gambling machine. The natural reading, and indeed the only reasonable one, is that the legislature meant the exception to apply to lotteries, and not gambling machines. Therefore, even if the kiosks met the requirements for in-pack chance promotions as defined in Wis. Stat. § 100.16(2), a question we do not need to answer here,[7] nothing in any of the relevant statutes exempts the kiosks from the consequences of

---

[7] In granting the Attorney General summary judgment, the circuit court rejected Quick Charge's argument that its kiosks met the seven criteria of an in-pack chance promotion under Wis. Stat. § 100.16(2). Below, the court of appeals declined to consider those criteria after determining the exception has no application under Wis. Stat. § 945.01(3). Quick Charge Kiosk LLC v. Kaul, 2019 WI App 51, ¶¶22, 35 n.9, 388 Wis. 2d 525, 934 N.W.2d 18. We do the same here.

the legislature's decision to prohibit and criminalize gambling machines.[8]

¶18 This brings us to Quick Charge's argument that its kiosks otherwise fail to satisfy the consideration requirement of the gambling machine definition, which Wis. Stat. § 945.01(3) does not further define. When statutory language is not specially defined or technical, it is given its "common, ordinary, and accepted meaning." State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. And if a word has a distinct meaning in the law——as "consideration" does——it should be given its accepted legal meaning. See Mueller v. TL90108, LLC, 2020 WI 7, ¶19, 390 Wis. 2d 34, 938 N.W.2d 566. Black's Law Dictionary defines consideration as "[s]omething (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promisee." Consideration, Black's Law Dictionary (11th ed. 2019). We apply this definition here as it is consistent with

---

[8] Quick Charge offers hypothetical in-pack chance promotions facilitated by a machine and wonders whether those too would constitute prohibited gambling machines——for example, a bottle-cap promotion in which a soda is purchased in a vending machine or a fast-food promotion conducted online or through a smartphone app. We need not determine the scope of what constitutes a "contrivance" or might otherwise meet the definition of a gambling machine or an in-pack chance promotion to conclude that the kiosks here meet the gambling machine definition in Wis. Stat. § 945.01(3).

11

the meaning of consideration in our common law.[9]  See, e.g., Story v. Menzies, 3 Pin. 329, 330-31 (1851) (explaining money paid in exchange for credit and a receipt was consideration); DOR v. River City Refuse Removal, Inc., 2007 WI 27, ¶¶50-51, 299 Wis. 2d 561, 729 N.W.2d 396 (discussing various formulations for how Wisconsin courts have defined consideration, notably as a benefit to the promisor or a detriment to the promisee, and mutual promises for future performance).

¶19 The kiosks' video game function wherein customers pay for an opportunity to obtain a cash prize falls within this understanding of consideration.  For customers who pay money to play the game, consideration occurs in two ways:  The customer first inserts money to receive video game credits.  Then the customer risks those credits in the video game.  Each step involves the customer trading something of value (money or credits) to obtain an opportunity to play the game and win something of value.  This bargained-for exchange is a paradigmatic example of consideration.

¶20 Quick Charge does not really argue otherwise.  Rather, it focuses on the fact that this is not always the case because

---

[9] The definition of consideration under the lottery subsection is merely a lottery-focused gloss on this ordinary definition.  See Wis. Stat. § 945.01(5)(b)1. ("anything which is a commercial or financial advantage to the promoter or a disadvantage to any participant").  That's not surprising.  Quick Charge's argument that the same word generally has the same meaning is usually correct.  But as explained above, that does not mean an exception written into one subsection should be copied and pasted into a different subsection where the exception does not appear.

customers can play the kiosk's video game without inserting their own money. Although neither has ever been used, Quick Charge offers two methods of free play. Customers can mail a form and self-addressed envelope to Quick Charge, and receive in return a certificate that can be exchanged at a retail location for one dollar to insert into a kiosk. Customers can also request a Quick Charge employee play a dollar's worth of credits on their behalf and mail out any resulting winnings.

¶21 Free play option or not, Quick Charge's argument does not overcome the reality that its kiosks can be used as gambling machines. Wisconsin Stat. § 945.01(3) does not define a gambling machine as a contrivance whose sole use is gambling. It says the opposite, namely, that a "gambling machine is a contrivance which for a consideration affords the player an opportunity to obtain something of value, the award of which is determined by chance." § 945.01(3) (emphasis added). Quick Charge's kiosks afford such an opportunity when a customer pays to play the video game. And when paying for the chance to win something of value, the consideration element is undoubtedly

13

met. Simply because a kiosk has uses other than illegal gambling does not negate that reality.[10]

¶22 In sum, because customers can pay to play a video game that awards cash prizes based on chance, Quick Charges' kiosks are gambling machines under Wis. Stat. § 945.01(3)(a). This conclusion is not affected by the definition of consideration for lotteries under § 945.01(5), or that subsection's exclusion of in-pack chance promotions under Wis. Stat. § 100.16(2). Likewise, the kiosks are no less gambling machines just because they can also be used for non-gambling purposes, including

---

[10] Other jurisdictions have similarly concluded that a free play option alone is not decisive evidence regarding whether something constitutes a form of illegal gambling. See, e.g., Barber v. Jefferson Cty. Racing Ass'n, 960 So. 2d 599, 612-15 (Ala. 2006) ("Thus, the readers are slot machines as to those who pay to play them. Are they any less so because a few patrons play for free? We think not. . . . Gratuitous entries obtained by mail or at the race track do not legitimize the high-stakes MegaSweeps any more than some opportunity for free plays could render innocuous a conventional slot machine."); see also 38 Am. Jur. 2d Gambling § 2 ("The opportunity for free plays does not negate the element of 'consideration' or obviate an inquiry into the purpose and effect of the operation as the final proof of consideration.").

The case Quick Charge cites for countervailing free play authority did not actually find a lack of consideration based on the availability of such an option. See Mid-Atl. Coca-Cola Bottling Co., Inc. v. Chen, Walsh & Tecler, 460 A.2d 44 (Md. 1983). At issue there was a Coca-Cola promotion based on bottle caps that could be obtained for free or through the purchase of various Coca-Cola products. Id. at 104. The Maryland court concluded the promotion was not an illegal lottery because there was no consideration for the chance to win a prize. Id. at 108. But that was so because no one paid for a chance as the price of Coca-Cola products stayed constant before, during, and after the promotion——i.e., every chance to win was a gift. Id. The same cannot be said for Quick Charge's kiosks.

14

cellphone charging and limited gratuitous use of their video game function. Therefore, Quick Charge's action seeking a declaration that its kiosks are not illegal gambling machines was correctly denied, and the circuit court properly granted summary judgment in the Attorney General's favor.

*By the Court.*—The decision of the court of appeals is affirmed.