AMERICAN TREASURES, INC., PLAINTIFF AND TREASURED ARTS, INC., PLAINTIFF/INTERVENOR v. STATE OF NORTH CAROLINA, GOVERNOR MICHAEL EASLEY, IN HIS OFFICIAL CAPACITY; NORTH CAROLINA DEPARTMENT OF CRIME CONTROL AND PUBLIC SAFETY; SECRETARY OF CRIME CONTROL AND PUBLIC SAFETY BRYAN E. BEATTY, IN HIS OFFICIAL CAPACITY; ALCOHOL LAW ENFORCEMENT DIVISION; DIRECTOR OF ALCOHOL LAW ENFORCEMENT DIVISION JOHN D. SMITH, III, IN HIS OFFICIAL CAPACITY, DEFENDANTS

No. COA04-1065

(Filed 6 September 2005)

**1. Declaratory Judgments— jurisdiction—equity**

The trial court had jurisdiction to determine a declaratory judgment action concluding that prepaid phone cards with an attached game piece sold by plaintiff are not an impermissible

form of gambling, and it was not required to apply the criminal law to lotteries to be litigated in criminal court, because: (1) equity may be invoked as an exception and may operate to interfere, even to prevent criminal prosecutions, when this is necessary to protect effectually property rights and to prevent irremediable injuries to the rights of persons; (2) the Court of Appeals has previously reviewed a trial court's consideration of a prayer for declaratory judgment and injunctive relief concerning the applicability of North Carolina's bingo statutes to a charitable sales promotion without indicating the existence of any jurisdictional bar; and (3) the declaratory judgment procedure is the only way plaintiff can protect its property rights and prevent Alcohol Law Enforcement from foreclosing the sale of its product in convenience stores.

**2. Gambling— prepaid phone cards—attached game piece—not game of chance**

The trial court did not err in a declaratory judgment action by declaring that plaintiff's prepaid phone cards that had an attached game piece were not an illegal method of gambling, a lottery, or a game of chance, because: (1) the purchase of the phone cards is made to obtain a valuable commodity, the sale of which is promoted by a process that is common in many promotional and sweepstakes type contests; (2) plaintiff's phone card provides the purchaser with a long-distance rate that is not merely competitive, but one of the best in the industry; (3) plaintiff's prepaid phone card is sufficiently compatible with the price being charged and has sufficient value and utility to support the conclusion that it, and not the associated game of chance, is the object being purchased; (4) consumers may receive free game pieces without purchasing the prepaid phone card via written request, which is some evidence that those who purchase the phone cards are doing so to receive the phone card and not the accompanying promotional game piece; and (5) states that permit lotteries do not give out free entries upon written request.

**3. Injunctions— permanent—no interference with sale of prepaid phone cards**

The trial court did not err by permanently enjoining defendants from interfering with the sale of plaintiff's phone cards with an attached game piece by any retail establishment even though the portion of the permanent injunction prohibiting defendants from making statements that the phone cards constitute an illegal

AMERICAN TREASURES, INC. v. STATE

[173 N.C. App. 170 (2005)]

gambling arrangement, lottery, or game of chance no longer functions in any meaningful capacity when the Court of Appeals held plaintiff's promotion and game cards are not an illegal gambling arrangement, lottery, or game or chance, because: (1) at the time this prohibition was issued, the factual circumstances indicated that Alcohol Law Enforcement agents were threatening the alcohol licenses of stores selling plaintiff's phone cards on the ground that they were illegal; and (2) the language of the injunction, in this factual setting, was intended to and operated to preclude such conduct.

Appeal by defendants from judgment entered 17 February 2004 by Judge Robert H. Hobgood in Wake County Superior Court. Heard in the Court of Appeals 24 March 2005.

*No brief filed by plaintiff, American Treasures, Inc.*

*Everett, Gaskins, Hancock & Stevens, L.L.P., by Hugh Stevens, for plaintiff-intervenor, Treasured Arts, Inc.*

*Attorney General Roy Cooper, by Special Counsel Isaac T. Avery, III, and Assistant Attorney General Stacey T. Carter, for the State.*

CALABRIA, Judge.

Defendants appeal from a judgment of the trial court (1) determining the pre-paid phone cards sold by Treasured Arts, Inc. ("plaintiff") are not an impermissible form of gambling and (2) permanently enjoining defendants from interfering with the sale of the phone cards by any retail establishment and/or indicating that they constitute an illegal gambling arrangement, lottery, or game of chance. We affirm.

Plaintiff is in the business of selling long-distance pre-paid phone cards. Plaintiff purchases bulk telephone time from companies that provide long-distance connections throughout the United States. Based upon the average length of a long-distance telephone call, plaintiff splits the bulk time up into two-minute increments, which it sells on phone cards for one dollar. The two-minute increments were chosen by plaintiff for its pre-paid phone cards because it was a niche market with less competition. The card is used by dialing a provided 800 number on any phone and entering a PIN number unique to each card sold. When the time on the card is completely

AMERICAN TREASURES, INC. v. STATE

[173 N.C. App. 170 (2005)]

used, the customer has the option of calling the company and add-ing additional time to the card. The record indicates without contra-diction that the long-distance rate of fifty cents per minute is "one of the lowest priced prepaid phone cards on the market" when com-pared with other rates that have no connection charge. Plaintiff, in fact, testified Consumer Reports indicated the best price was fifty-cents per minute.

Attached to each phone card is a free promotional game piece in which the consumer may win a prize based on what is revealed under a scratch-off area. Plaintiff included this with the purchase of the phone card at the recommendation of a national advertising consult-ing firm in order to facilitate their entry into the market. In appear-ance, plaintiff's product consists of a larger card perforated into a phone card portion and a game portion. Multiple versions of the phone card and promotion exist, but generally speaking, the follow-ing observations can be made: the phone card portion includes rep-resentations that plaintiff is "one of the nation's largest pre-paid phone companies[,]" the card is a pre-paid phone card and entitles the consumer to two minutes for one dollar, and the card encourages the consumer to "save cash on long distance calls[.]" The game por-tion varies with the prize that can be won but generally provides two chances for the purchaser to win monetary amounts up to $50,000 (along with smaller increments) or prizes such as a Corvette.

If customers wish to participate in the game promotion without actually purchasing a pre-paid phone card, they may do so by sending a written request and a stamped self-addressed envelope to plaintiff's designated address. Each written request entitles the sender to one game piece, and the number of requests for a free game piece is not limited. Those who receive a game piece without purchasing a phone card "have the exact, same opportunity as a person who buys a phone card and gets one free one in the store." Since the beginning of the promotion in 1995 until the time of the hearing, plaintiff sent out free game pieces to 11,664 individuals, and the promotional game pro-duced winnings for approximately 8,000 people.

Since plaintiff commenced sales of phone cards to which were attached the game pieces, the State has not brought or threatened criminal action against plaintiff. Plaintiff sold its pre-paid phone cards primarily through convenience stores. Sometime in 2001 or 2002, plaintiff started receiving reports that agents with the Alcohol Law Enforcement Division ("ALE") were threatening to take action against the convenience stores' licenses to sell beer and other alco-

holic beverages ("alcohol license") on the grounds that the sale of plaintiff's phone cards was illegal. Plaintiff moved and was allowed to intervene in a declaratory judgment action brought against defendants by American Treasures, Inc. Plaintiff's action for declaratory and injunctive relief was subsequently severed from that of American Treasures, Inc., and only plaintiff's appeal is presented.

On 8 March 2002, the trial court entered an order finding, in pertinent part, the following: (1) plaintiff's phone card entitled purchasers to make two minutes of long-distance phone calls anywhere in the continental United States pursuant to a tariff filed with and approved by the North Carolina Utilities Commission; (2) plaintiff encouraged the sale of the pre-paid phone cards by awarding prizes through a premium award system, which could be entered irrespective of the purchase of the pre-paid phone cards; (3) ALE announced its intention to require retail facilities selling alcoholic beverages to remove plaintiff's pre-paid phone cards or face prosecution, resulting in many retailers refusing to continue to sell plaintiff's cards; (4) plaintiff was suffering irreparable injury of incalculable losses of sales and profits and, due to the doctrine of sovereign immunity, no adequate remedy existed at law; and (5) plaintiff had preliminarily demonstrated that the use of the promotion was not an illegal gambling arrangement, lottery, or game of chance and was likely to prevail on the merits at trial whereas no serious harm would be sustained by the State or its citizens if the status quo were maintained. Accordingly, the Honorable Howard E. Manning, Jr., issued a preliminary injunction against defendants from interfering with the alcohol licenses or sale of plaintiff's pre-paid phone cards by retail establishments and from issuing statements that plaintiff's phone cards were illegal.

The matter was heard in superior court on 14 and 15 January 2004. Judge Robert H. Hobgood entered a declaratory judgment (with findings similar to those in the preceding order) declaring that plaintiff's phone cards were not an illegal method of gambling, a lottery, or a game of chance and converted the preliminary injunction into a permanent injunction. Defendants appeal.

I. Jurisdiction

[1] In their first assignment of error, defendants assert that the trial court should have dismissed the case and allowed the issue of applying the criminal law to lotteries to be litigated in criminal court and that no justiciable controversy exists. We disagree.

**AMERICAN TREASURES, INC. v. STATE**

[173 N.C. App. 170 (2005)]

It is a well settled principle of law that courts of equity are without jurisdiction to "interfere by injunction to restrain a criminal prosecution . . . for [the] violation of statutes . . . [and] th[is] rule applies[] whether the prosecution is by indictment or by summary process [and whether it has been] merely threatened or . . . ha[s] already been commenced." *State v. R.R.*, 145 N.C. 495, 519, 59 S.E. 570, 578 (1907). *See also Thompson v. Town of Lumberton*, 182 N.C. 260, 262, 108 S.E. 722, 723 (1921) (observing that it has "been uniformly held that an injunction will not be granted to restrain the enforcement of the criminal law except when it is necessary to prevent irrevocable injury to, or destruction of, property or to protect the defendant from oppressive and vexatious litigation"). The rationale for this rule is that the enforcement of a criminal statute may properly be "challenged and tested only by way of defense to a criminal prosecution based thereon" and the "legal remedies of 'trial by jury, *habeas corpus*, motion, and plea are abundant safeguards' " when balanced against the " 'serious consequences likely to follow the arbitrary tying of the hands of those entrusted with the enforcement of penal statutes.' " *D & W., Inc. v. Charlotte*, 268 N.C. 577, 582, 151 S.E.2d 241, 245 (1966). Additionally, declaratory judgments should not be used to determine criminal issues; however, a court is not without authority to grant a declaratory judgment merely because a questioned statute relates to penal matters. *Jernigan v. State*, 279 N.C. 556, 560-61, 184 S.E.2d 259, 263-64 (1971).

Our Supreme Court considered these principles in *McCormick v. Proctor*, 217 N.C. 23, 6 S.E.2d 870 (1940). In *McCormick*, law enforcement officers interfered with an owner's possession of certain slot machines on the grounds that such machines were illegal. *Id.*, 217 N.C. at 24, 6 S.E.2d at 871. The trial court declined to restrain the interference on the grounds that the officers were engaged in the enforcement of criminal law and refused to hear evidence or find facts regarding the legality of the machines. *Id.* Citing the above principles, our Supreme Court reversed, holding that equity may nevertheless be invoked as an exception to those principles and may operate to "interfere, even to prevent criminal prosecutions, when this is necessary to protect effectually property rights and to prevent irremediable injuries to the rights of persons." *Id.*, 217 N.C. at 29, 6 S.E.2d at 874. Moreover, this Court has previously reviewed a trial court's consideration of a prayer for declaratory and injunctive relief concerning the applicability of North Carolina's bingo statutes to a charitable sales promotion without indicating the existence of any

jurisdictional bar. *Animal Protection Society v. State of North Carolina,* 95 N.C. App. 258, 382 S.E.2d 801 (1989).

· We hold the trial court's exercise of jurisdiction under the facts of the instant case was proper. First, we find *McCormick* and *Animal Protection Society* are sufficiently similar to the facts of the instant case and are controlling on the issue of the trial court's jurisdiction. Second, the declaratory judgment procedure is the only way plaintiff can protect its property rights and prevent ALE from foreclosing the sale of its product in convenience stores. There is no indication in the record that a prosecution is pending against plaintiff, nor is one necessary in light of the State's ability to curtail the sale of plaintiff's product by threatening retail stores with the loss of their alcohol licenses upon failure to cease such sales. The likelihood of criminal prosecution against the retail stores, while threatened, is likewise remote. The evidence at trial illustrates the sale of 120 cards only produces approximately sixteen dollars of income to the store. That relatively meager profit would not justify a convenience store carrying plaintiff's product and risking the loss of revenue from its alcohol license. Accordingly, without seeking a declaratory judgment, plaintiff would be unable to effectively protect its property rights. Defendants' jurisdictional argument is overruled.

II. Injunction and Order

[2] Having determined the trial court had jurisdiction to hear and decide the declaratory judgment action brought by plaintiff, we now turn to the merits of the trial court's order. Defendants asserted plaintiff's promotional game was an illegal lottery or form of gambling under Article 37 of Chapter 14 of the North Carolina General Statutes. The trial court disagreed and entered declaratory judgment in favor of plaintiff.

Part 1 of Chapter 14, Article 37 of our General Statutes, entitled "Lotteries and Gaming," prohibits lotteries and other forms of gambling. N.C. Gen. Stat. §§ 14-289 to 14-309.20 (2003). A lottery has been defined as "any scheme for the distribution of prizes, by lot or chance, by which one, on paying money or giving any other thing of value to another, obtains a token which entitles him to receive a larger or smaller value, or nothing, as some formula of chance may determine." *State v. Lipkin,* 169 N.C. 265, 271, 84 S.E. 340 (1915). It is the character and substance of an activity and not the denomination or form that determines whether it is prohibited by law. *Animal Protection Society,* 95 N.C. App. at 268, 382 S.E.2d at 807; *Lipkin,* 169

N.C. at 271, 84 S.E. at 343 (noting the law "will strip the transaction of all its thin and false apparel and consider it in its very nakedness [and] look to the substance and not to the form of [the transaction] in order to disclose its real elements . . ."). The analysis in *Lipkin* and the cases cited therein make clear that where one, in order to secure a chance to win something of greater value, purchases a token for small consideration or a trivial price or pays more than the value of an item, the transaction is prohibited.

This conclusion is further bolstered by this Court's analysis in *Animal Protection Society*. In that case, we considered a charitable sales promotion in which participants paid five dollars or one dollar for, respectively, a comb valued at nineteen cents or a piece of candy valued at one cent. *Animal Protection Society*, 95 N.C. App. at 261, 382 S.E.2d at 802-03. Participants also received "free" bingo cards regardless of whether they "purchased" a comb or candy; however, the number of cards the participant received increased with what and how much the participant bought. *Id.*, 95 N.C. App. at 261, 382 S.E.2d at 803. This Court characterized the "charitable sales promotion" scheme with "absolutely free bingo" as a "mere subterfuge" for a bingo game operated in violation of our statutes. *Id.*, 95 N.C. App. at 268, 382 S.E.2d at 807. This Court also contrasted that scheme with "an advertising promotion directed at increasing sales of a legitimate product or service offered in the free marketplace by a business regularly engaged in the sale of such goods or services." *Id.*, 95 N.C. App. at 268, 382 S.E.2d at 807. In like manner, the issue, with respect to the pre-paid phone cards and accompanying game pieces, is whether plaintiff's activities, in character, constitute a lottery scheme or the sale of a legitimate product.

The trial court, in pertinent part, set out both the value and utility of the minutes purchased on the phone card. The trial court further noted that the accompanying game pieces was merely a marketing system which promoted and encouraged the sale of the phone cards. Such findings and conclusions adhere to the appropriate legal standard and properly address that the purchase is made to obtain a valuable commodity, the sale of which is promoted by "a process that is common in many promotional and sweepstakes type contests." *Mississippi Gaming Commission v. Treasured Arts, Inc.*, 699 So.2d 936 (1997) (examining similar phone cards, also sold by plaintiff, under the laws of Mississippi prohibiting lotteries and determining the promotions were not barred).

AMERICAN TREASURES, INC. v. STATE

[173 N.C. App. 170 (2005)]

After careful review of the record evidence, we agree with the trial court's determination for two reasons. First, this type of promotion is, as noted *supra*, commonly used to encourage the sale of numerous consumer items. Defendants, ostensibly, proceed under the theory that the use of this promotion to encourage sales of other products is permissible because the consumer pays for the product and not the associated game promotion. Defendants are of the opinion that the phone card lacks sufficient value to entitle plaintiff to utilize the same promotional methods. We agree with defendants that there are situations where it is clear that the product being "sold" is merely ancillary and incidental to the accompanying game of chance, *see, e.g., Animal Protection Society*, 95 N.C. App. at 268, 382 S.E.2d at 807; however, the evidence before the trial court and on appeal indicates without contradiction that plaintiff's phone card provides the purchaser with a long-distance rate that is not merely competitive, but one of the best in the industry. This fact certainly supports the proposition that the average consumer would purchase the pre-paid phone card in order to take advantage of plaintiff's proffered rate.[1] Thus, based on the record evidence, plaintiff's pre-paid phone card is sufficiently compatible with the price being charged and has sufficient value and utility to support the conclusion that it, and not the associated game of chance, is the object being purchased.

A second reason supporting the validity of plaintiff's promotional scheme is that consumers may receive free game pieces without purchasing the pre-paid phone card via written request, which is some evidence that those who purchase the phone cards are doing so to receive the phone card and not the accompanying promotional game piece.[2] As plaintiff rightly points out, lotteries (in states where permitted) do not give out free entries upon written request. We hold the

1. Defendants argue that plaintiff markets the pre-paid phone card to those who do not have phone service and must use pay phones, which sometimes requires the additional payment of up to thirty-five cents. The charge associated with using a pay phone, however, is distinct from the purchase of long-distance time on plaintiff's card and has no bearing on the value of the product sold by plaintiff or whether that value would prompt the consumer to purchase the product.

2. Defendants argue a game piece received by written request is not free because the consumer must pay postage as well as incidental and minimal fees for the envelope and paper on which the request is made. Using such costs to assert the game piece is not free; however, it is akin to including the cost of gas in traveling to the store as part of the purchase price of the goods bought therein. Such expenses neither accrue to the benefit of the person to whom the mail is delivered nor the store which the consumer patronizes. Neither, in the instant case, does the postage paid accrue to the benefit of plaintiff and cannot be said to constitute the "cost" of the game piece.

price paid for and the value received from the pre-paid phone cards is sufficiently commensurate to support the determination that the sale of the product is not a mere subterfuge to engage in an illegal lottery scheme, whereby consideration is paid merely to engage in a game of chance. Defendants proffered that alternative or additional findings of fact were not pertinent to the resolution reached by the trial court of the issues; thus, the trial court did not err in refusing to make non-material findings of fact. *Accord Green Tree Financial Services Corp. v. Young,* 133 N.C. App. 339, 341, 515 S.E.2d 223, 224 (1999). Entry of declaratory judgment in favor of plaintiff by the trial court was not erroneous, and this assignment of error is overruled.

III. Scope of Injunction

[3] Finally, defendants attack the scope of the conduct enjoined by the trial court, notwithstanding whether injunctive relief was appropriately granted. The portion of the injunction appealed prohibited "[m]aking or issuing any statement[s] outside the proceedings in this case alleging or contending that [plaintiff's] phone cards constitute an illegal gambling arrangement, lottery, or game of chance." At the time this prohibition was issued, the factual circumstances indicate ALE agents were threatening the alcohol license of stores selling plaintiff's phone cards on the grounds that they were illegal. The language of the injunction, in this factual setting, was intended to and operated to preclude such conduct. Having held plaintiff's promotion and phone cards are not an illegal gambling arrangement, lottery, or game of chance, it stands to reason that such allegations or contentions by defendants are obviated, and this portion of the permanent injunction no longer functions in any meaningful capacity.

Affirmed in part and vacated in part.

Judges TIMMONS-GOODSON and GEER concur.