HUDSON, Justice.
This case presents the question whether the Medical Fee Schedule promulgated by the North Carolina Industrial Commission (Commission) may bar certain individuals from receiving compensation for attendant care services they provided before obtaining approval for those services from the Commission. We hold that the *121 Commission may not do so since such action would exceed the power granted to the Commission by the General Assembly. Because the Court of Appeals enforced that provision of the Commission’s Medical Fee Schedule, which we conclude was adopted in excess of the Commission’s authority, we reverse in part the decision of the Court of Appeals. But because defendants here have challenged the reasonableness of the timing of plaintiff’s request for approval of attendant care and the Commission’s findings do not address this issue, we remand for the Commission to do so.
On 13 August 2007, plaintiff suffered a compensable injury to his left knee while working as a restaurant manager for defendant Burger King, where he had been employed for approximately eighteen years. As a result of his injury, plaintiff underwent a “left knee arthroscopy with a partial medial meniscectomy” at Transylvania Community Hospital. Plaintiff’s condition failed to improve after surgery, and he ultimately developed “reflex sympathetic dystrophy” (“RSD”). Despite undergoing a number of additional procedures, plaintiff continued to suffer pain. Plaintiff eventually was diagnosed with depression related to the injury and resulting RSD, and his psychiatrist concluded that it was unlikely plaintiff’s “mood w[ould] much improve until his pain is under better control.”
Likely due to pain, plaintiff increasingly attempted to limit his movements following his diagnosis of RSD. By 8 April 2008, plaintiff was using “an assistive device” to move or walk around. On 21 April 2008, John Stringfield, M.D., plaintiff’s family physician, prescribed a mobility scooter for plaintiff, and medical records show that by 20 June 2008, plaintiff was using a walker. On 18 December 2008, plaintiff requested a prescription for a hospital bed from Eugene Mironer, M.D., a pain management specialist with Carolina Center for Advanced Management of Pain, to whom plaintiff had been referred as a result of his diagnosis with RSD. Dr. Mironer’s office declined to recommend a hospital bed, instructing plaintiff to see his family physician instead. That same day plaintiff visited his family physician, Dr. Stringfield, who prescribed both a hospital bed and a motorized wheelchair.
Since plaintiff’s injury, his wife has assisted him with his daily activities in the home. Until 14 August 2008, plaintiff’s wife attended to his needs approximately four hours per day. On 15 August 2008, Mrs. Mehaffey discontinued her outside employment, and since then she has attended to plaintiff’s needs approximately sixteen hours per day. In her caregiver role, Mrs. Mehaffey helps “plaintiff out of bed in *122 the morning, gives him a sponge bath, and assists [him] in dressing.” She also helps “get [him] onto the scooter and transfers [him] from the scooter to a recliner, where plaintiff sits most of the day.” She prepares plaintiffs meals and attends to his bodily needs. At the end of each day, Mrs. Mehaffey helps “plaintiff dress for bed and helps him into bed.”
Despite plaintiffs efforts to limit his activity and movement, the medical providers plaintiff saw for pain management indicated that he would derive greater benefit if he attempted to move under his own strength, which would force him to rehabilitate his injury. James North, M.D., the codirector of pain management at Wake Forest Baptist Hospital and plaintiffs preferred treating physician, “opined that providing plaintiff with a power wheelchair was counterproductive to his recovery” because “people using wheelchairs tend to gain weight and avoid using the extremity that causes their pain, both of which impede[ ] the recovery process.” Dr. North reasoned that “the less an injured extremity is used, the worse the condition will become.” Likewise, Dr. North concluded “that there was no scientific or medical basis for requiring a hospital bed for patients with RSD.” Dr. North’s medical opinion was echoed by Dr. Mironer. Nonetheless, plaintiff used these mobility aids and comfort devices, procuring for himself the hospital bed and motorized scooter.
Plaintiff’s family physician and other individuals began to recommend that plaintiff receive attendant care services. On 9 March 2009, Judy Clouse, a nurse consultant employed by the Commission, recommended that plaintiff receive eight hours of attendant care daily, Monday through Friday, from a Certified Nursing Assistant. On 5 June 2009, Dr. Stringfield recommended that plaintiff have sixteen hours a day of attendant care services, retroactive to the day plaintiff was diagnosed with RSD, thereby including the almost two years of attendant care plaintiff’s wife had already provided. Bruce Holt, a certified life care planner, also opined that plaintiff “needs attendant care for at least 16 hours per day, seven days a week.”
In light of these recommendations regarding his needs, plaintiff sought a hearing before the Commission to clarify the extent of medical compensation owed to him. Defendants denied any failure to pay for necessary medical treatment. Relevant for our purposes, plaintiff and defendants disagree whether plaintiff’s wife should be compensated for the attendant care she provided plaintiff before the Commission approved her rendering that service. Defendants contend that the Commission’s Medical Fee Schedule prevents such an *123 award of retroactive compensation to Mrs. Mehaffey. Plaintiff, on the other hand, views Mrs. Mehaffey’s attendant care services as simply another component of medical compensation within the meaning of N.C.G.S. § 97-2(19) (2007), for which defendants are responsible under N.C.G.S. § 97-25 (2007).
The Commission agreed with plaintiff on this issue, choosing not to follow its own fee schedule, perhaps in recognition that it was not authorized to deny reimbursement for these services. First, in an opinion and award filed on 29 January 2010, a deputy commissioner directed defendants to compensate Mrs. Mehaffey for the “attendant care services rendered to plaintiff at the rate of $12.50 per hour, 16 hours per day and seven days per week, from 15 August 2008, through the present and continuing until further order of the Commission.” On appeal the Full Commission affirmed in pertinent part the deputy commissioner’s opinion and award, concluding that Mrs. Mehaffey’s attendant care services were medical compensation for which defendants were responsible under sections 97-2(19) and 97-25 of our General Statutes. In addition, the Full Commission further compensated Mrs. Mehaffey for the attendant care services previously provided from 15 November 2007 through 14 August 2008, while she was still employed outside the home. For those attendant care services the Full Commission awarded compensation for four hours daily, seven days a week, also at a rate of $12.50 per hour.
The Court of Appeals, relying on our decision in Hatchett v. Hitchcock Corp., 240 N.C. 591, 83 S.E.2d 539 (1954), reversed the Commission’s decision to provide compensation for Mrs. Mehaffey’s past attendant care services. Mehaffey v. Burger King,_N.C. App _,_, 718 S.E.2d 720, 723-24 (2011). In Hatchett we were presented with a situation in which the Commission had awarded financial compensation to an injured worker’s mother under sections 97-25 and 97-26 of our General Statutes for practical nursing services that she provided to her son without prior approval from the Commission. 240 N.C. at 592-93, 83 S.E.2d at 540-41. Ultimately, this Court determined that the Commission’s fee schedule, promulgated pursuant to the Commission’s rulemaking authority under the Workers’ Compensation Act (the Act), prohibited such an award of compensation for practical nursing services unless that conduct had been first approved by the Commission. Id. at 593-94, 83 S.E.2d at 541-42. As a result, we reversed the Commission’s award.
The Court of Appeals reasoned that the outcome in the present case is controlled by our decision in Hatchett. First, that court *124 observed that the claim for payment in this case was brought under sections 97-25 and 97-26 of our General Statutes, the same provisions that were at issue in Hatchett. Mehaffey, _N.C. App. at_, 718 S.E.2d at 724. Additionally, the Court of Appeals explained that the language of the rule at issue in Hatchett, which said, “Fees for practical nursing service by a member of claimant’s family or anyone else will not be honored unless written authority has been obtained in advance,” is nearly identical to the language now found in the Commission’s Medical Fee Schedule. Id. at_, 718 S.E.2d at 723-24 (citations and quotation marks omitted). As a result, the Court of Appeals concluded that the Commission should have followed the holding of Hatchett and thus declined to award compensation for Mrs. Mehaffey’s past provision of attendant care services. Id. at_, 718 S.E.2d at 724.
We allowed plaintiff’s petition for discretionary review to consider the Court of Appeals’ decision regarding the Commission’s award of compensation for past attendant care services provided before approval was obtained from the Commission. Mehaffey v. Burger King,_N.C. __, 726 S.E.2d 177 (2012). Plaintiff contends that the Court of Appeals erred by following the holding of Hatchett. Instead, plaintiff asserts that the Commission does not have statutory authority under section 97-26(a) to prohibit compensation of an immediate family member for the provision of attendant care services unless prior authorization was obtained. Defendants, on the other hand, contend that the Court of Appeals properly followed our decision in Hatchett. Moreover, defendants argue that allowing members of an injured employee’s immediate family to be compensated for providing attendant care without the Commission’s having first approved that service would contravene one of the underlying purposes of the Act, which is to control medical expenses. To resolve this dispute we turn first to the provisions of the Act.
Generally speaking, the Act provides for the compensation of employees who sustain workplace injuries. N.C.G.S. §§ 97-1 to -101.1 (2011). The Act places upon an employer the responsibility to furnish “medical compensation” to an injured employee. Id. § 97-25. At the time of plaintiff’s injury, the Act defined “medical compensation” as:
Medical Compensation. — The term “medical compensation” means medical, surgical, hospital, nursing, and rehabilitative services, and medicines, sick travel, and other treatment, including medical and surgical supplies, as may reasonably be required to *125 effect a cure or give relief and for such additional time as, in the judgment of the Commission, will tend to lessen the period of disability; and any original artificial members as may reasonably be necessary at the end of the healing period and the replacement of such artificial members when reasonably necessitated by ordinary use or medical circumstances.
Id. § 97-2(19) (2007). The Act’s catch-all provision for “other treatment” has been understood to include attendant care services. See, e.g., Ruiz v. Belk Masonry Co., 148 N.C. App. 675, 681, 559 S.E.2d 249, 253-54 (upholding an award of attendant care benefits), appeal dismissed and disc. rev. denied, 356 N.C. 166, 568 S.E.2d 610 (2002). Moreover, the parties do not dispute that attendant care services fall under the version of section 97-2(19) in effect when plaintiff was injured and that the current version of that statute expressly includes “attendant care services,” N.C.G.S. § 97-2(19) (2011).
The Act is designed also to control medical costs. Indeed, as we said in Charlotte-Mecklenburg Hospital Authority v. North Carolina Industrial Commission, “The General Assembly enacted the Act in 1929 to both provide swift and sure compensation to injured workers without the necessity of protracted litigation, arid to insure a limited and determinate liability for employers.” 336 N.C. 200, 203, 443 S.E.2d 716, 718-19 (1994) (citation, alteration, and internal quotation marks omitted)), superseded by statute, The Workers’ Compensation Reform Act of 1994, ch. 679, sec. 2.3, 1993 N.C. Sess. Laws (Reg. Sess. 1994) 394, 398 (amending N.C.G.S. § 97-26(b) effective 1 October 1994). The latter is essentially a trade-off for the former.
In keeping with its desire to control medical costs, in 1994 the legislature directed the Commission to “adopt a schedule of maximum fees for medical compensation,” which would enable employers more accurately to predict their potential financial exposure following an employee’s injury. The Workers’ Compensation Reform Act of 1994, ch. 679, sec. 2.3, 1993 N.C. Sess. Laws (Reg. Sess. 1994) 394, 397 (codified at N.C.G.S. § 97-26(a)). Before that time an employer’s pecuniary liability was tethered to the costs that prevailed “in the same community for similar treatment of injured persons of a like standard of living when such treatment is paid for by the injured person.” Id. Departing from its previous standard, the General Assembly instructed that this new Medical Fee Schedule “shall be adequate to ensure that (i) injured workers are provided the standard of services and care intended by this Chapter, (ii) providers are reimbursed reasonable fees for providing these services, and (iii) medical costs are *126 adequately contained.” Id. The adoption of a Medical Fee Schedule aids in fulfilling a purpose of the Act by indicating to employers the amount of their potential financial exposure.
The central issue in the case sub judice is whether the Commission exceeded its authority in promulgating a provision of its Medical Fee Schedule to create a prerequisite to reimbursement for certain care. To answer this question, like all similar questions, we must ascertain whether the General Assembly authorized the administrative body — here the Industrial Commission — to undertake the challenged conduct. E.g., High Rock Lake Partners, LLC v. N.C. DOT, _N.C._,_, 735 S.E.2d 300, 303-04 (2012). Administrative agencies, as creatures of statute, may act only as authorized by the legislature. In re Broad & Gales Creek Cmty. Ass’n, 300 N.C. 267, 280, 266 S.E.2d 645, 654-55 (1980) (citations omitted). As an administrative agency, the Commission must act consistently with the intent of the General Assembly. See, e.g., Gregory v. W.A. Brown & Sons, 363 N.C. 750, 763-64, 688 S.E.2d 431, 440 (2010). A provision of the Commission’s Medical Fee Schedule that is contrary to our General Statutes is, as a result, without effect. Forrest v. Pitt Cnty. Bd. of Educ., 100 N.C. App. 119, 125-28, 394 S.E.2d 659, 662-64 (1990), aff’d per curiam, 328 N.C. 327, 401 S.E.2d 366 (1991).
We understand the difficulty in monitoring home health care, especially when furnished by a family member. In an apparent effort to address this issue, the Commission adopted Section 14 of the Medical Fee Schedule, which states in pertinent part:
Except in unusual cases where the treating physician certifies it is required, fees for practical nursing services by members of the immediate family of the injured will not be approved unless written authority for the rendition of such services for pay is first obtained from the Industrial Commission.
While good policy reasons may exist for the prerequisites created here in the Schedule, this matter is a legislative determination, not one to be made by the Commission without statutory authorization. Neither section 97-26(a) nor any other provision in our General Statutes grants the Commission the power to create such a requirement. See N.C.G.S. § 97-26(a). In fact, the legislature explicitly stated that the Commission’s Medical Fee Schedule “shall . . . ensure that... providers are reimbursed reasonable fees for” their services. Id. And as the enabling legislation indicates, the fee schedule is designed to facilitate uniformity and predictability in the medical costs employers *127 axe required to pay under the Act. See Ch. 679, sec. 2.3, 1993 N.C. Sess. Laws (Reg. Sess. 1994) at 397. Section 97-26(a) of our General Statutes does not give the Commission the authority to mandate that certain attendant care service providers may not be compensated unless they first obtain approval from the Commission before rendering their assistance. N.C.G.S. § 97-26(a). As a result, we are unable to permit Section 14 of the Commission’s Medical Fee Schedule to prevent the award of retroactive compensation for the attendant care services Mrs. Mehaffey provided her husband. See Forrest, 100 N.C. App. at 125, 394 S.E.2d at 662 (noting that the Commission’s Medical Fee Schedule is “superseded by” our General Statutes).
We are mindful that this result may appear on its face to be inconsistent with our decision in Hatchett. When, however, a change occurs in the law upon which a prior decision rests, this Court must look afresh at the questioned provision. See Patterson v. McLean Credit Union, 491 U.S. 164, 173, 109 S. Ct. 2363, 2370, 105 L. Ed. 2d 132, 148 (1989) (“In cases where statutory precedents have been overruled, the primary reason for the Court’s shift in position has been the intervening development of the law, through either the growth of judicial doctrine or further action taken by Congress.”), superseded on other grounds by statute, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (enacting 42 U.S.C. § 1981(b)), as recognized in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004). Our decision in Hatchett was based on the fee schedule (which has remained largely unchanged) and the statutory language of former section 97-26. Under the statutory language at that time, an employer was liable for medical treatment “when ordered by the Commission.” N.C.G.S. § 97-26 (1950). Our decision in Hatchett emphasized that statutory language: “G.S. 97-26 provides for the pecuniary liability of the employer for medical, surgical, hospital service or other treatment required, when ordered by the Commission. ” Hatchett, 240 N.C. at 594, 83 S.E.2d at 542. We reasoned that these “plain and explicit words” meant that the plaintiffs mother should not be compensated for her attendant care services because the Commission had not approved the care nor had the plaintiff asked for such an approval. Id. at 594, 83 S.E.2d at 542. It appears that we relied heavily on the statutory language to determine that the Commission must be bound by its fee schedule. Id. However, in 1994 section 97-26 was completely rewritten, removing the “when ordered by the Commission” language and replacing it with language requiring the Commission to adopt fee schedules and outlining the procedures and standards for doing so. Ch. 679, sec 2.3, 1993 N.C. Sess. Laws at 397. *128 Therefore, the statutory basis for the decision in Hatchett no longer exists, and, as stated above, no statutory basis exists for the current fee schedule.[1]
Nonetheless, we are unable to affirm the Commission’s award of compensation for Mrs. Mehaffey’s past attendant care services. As plaintiff concedes, to receive compensation for medical services, an injured worker is required to obtain approval from the Commission within a reasonable time after he selects a medical provider. Schofield v. Great Atl. & Pac. Tea Co., 299 N.C. 582, 593, 264 S.E.2d 56, 63 (1980). If plaintiff did not seek approval within a reasonable time, he is not entitled to reimbursement. Here, defendants have challenged the reasonableness of the timing of plaintiff’s request, and the opinion and award filed by the Full Commission does not contain the required findings and conclusions on this issue. Accordingly, we remand to the Court of Appeals for further remand to the Commission to make the necessary findings of fact and conclusions of law on this issue.
The Court of Appeals reversed in pertinent part the opinion and award entered by the Full Commission, which provided retroactive compensation for Mrs. Mehaffey’s attendant care services to her husband. Because that court relied on a provision of the Commission’s Medical Fee Schedule that is not authorized by our legislature, we reverse the decision of the Court of Appeals on that issue. We remand this matter to the Court of Appeals for further remand to the Commission for additional proceedings consistent with this opinion.
REVERSED IN PART AND REMANDED.
Justice BEASLEY did not participate in the consideration or decision of this case.

. Going forward, under the 2011 revisions to the Workers’ Compensation Act, section 97-2(19) defines “Medical Compensation” to include “attendant care services prescribed by a health care provider authorized by the employer or subsequently by the Commission." N.C.G.S. § 97-2(19) (2011) (emphasis added).