IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-161

Filed: 7 February 2017

Randolph County, No. 15 CVS 1733

T AND A AMUSEMENTS, LLC; and CRAZIE OVERSTOCK PROMOTIONS, LLC,
Plaintiffs,

v.

PATRICK McCRORY, in his official capacity as Governor of the State of North
Carolina; FRANK L. PERRY, in his official capacity as Secretary of the North
Carolina Department of Public Safety; MARK J. SENTER, in his official capacity as
Branch Head of the Alcohol Law Enforcement Division; JODY WILLIAMS, in his
official capacity as the Chief of Police of the City of Asheboro, North Carolina; and
MAYNARD B. REID, JR., in his official capacity as the Sheriff of Randolph County,
Defendants.


Appeal by plaintiffs from order entered 19 November 2015 by Judge Michael

D. Duncan in Randolph County Superior Court. Heard in the Court of Appeals 24

August 2016.


*Morningstar Law Group, by William J. Brian, Jr. and Keith P. Anthony, for
plaintiffs-appellants.*

*Joshua H. Stein, Attorney General, by Hal F. Askins, Special Deputy Attorney
General, and J. Joy Strickland, Assistant Attorney General, for defendants-
appellees Patrick McCrory, Frank L. Perry, and Mark J. Senter.*

*Cranfill Sumner & Hartzog LLP, by Jaye E. Bingham-Hinch and Patrick H.
Flanagan, for defendant-appellee Jody Williams.*

*No brief filed on behalf of defendant-appellee Maynard B. Reid, Jr.*


DAVIS, Judge.

This case requires us to revisit the issue of whether lawsuits brought by companies in the business of licensing and distributing promotional rewards programs seeking declaratory and injunctive relief as to the legality of those programs are barred by sovereign immunity or are otherwise nonjusticiable. Crazie Overstock Promotions, LLC ("Crazie Overstock") and T and A Amusements, LLC ("T&A") (collectively "Plaintiffs") argue that the trial court erred in dismissing their amended complaint pursuant to Rules 12(b)(1), (2), and (6) of the North Carolina Rules of Civil Procedure. Because we conclude that Plaintiffs' claims are neither barred by sovereign immunity nor nonjusticiable, we reverse the trial court's order and remand for further proceedings.

## Factual and Procedural Background

Crazie Overstock, a retailer of various discount goods, licenses "retail establishments" to promote and display its goods, which may then be purchased through Crazie Overstock's website. Customers may purchase items through the website with either a credit card or an electronic gift certificate. In order to incentivize the sale of such gift certificates, Crazie Overstock has created a promotional rewards program (the "CO Rewards Program").

The CO Rewards Program allows customers to receive a certain number of "game points" for each dollar of gift certificates they purchase through kiosks located in the retail establishments. Game points may then be used to play "reward games"

on machines in these establishments. The reward games require no skill, and their results are determined randomly. Customers who are successful at reward games receive "reward points" as a result. Reward points, in turn, may be used by the customer to play a "dexterity test," which tests players' hand-eye coordination and reflexes by requiring them "to stop a simulated stopwatch within specified ranges." Customers who are successful at the dexterity test then receive "dexterity points," which may be redeemed for cash rewards.

T&A is a distributor for Crazie Overstock and, as such, is responsible for recruiting persons to operate retail establishments and for helping to set up and service those establishments. In the spring of 2015, T&A recruited an entity called Mighty Enterprises, LLC ("Mighty Enterprises") to operate a store in Asheboro, North Carolina. The Mighty Enterprises store, which opened in May 2015, offered the CO Rewards Program to its customers.

Based on their knowledge that the Alcohol Law Enforcement Division ("ALE") of the North Carolina Department of Public Safety and local law enforcement agencies had previously investigated other businesses offering similar promotional rewards programs, the principals of Mighty Enterprises contacted the Asheboro Police Department and offered to conduct a demonstration of the CO Rewards Program in the hope of demonstrating that the program did not violate North Carolina's gambling and sweepstakes statutes.

On 17 June 2015, a demonstration of the CO Rewards Program was conducted for Detective Daniel Shropshire of the Asheboro Police Department and Agent Stephen Abernathy of ALE. After the demonstration, the officers stated that they would review the legality of the CO Rewards Program with their respective supervisors as well as the district attorney.

On 25 June 2015, Detective Shropshire contacted Dawn Moffitt, a principal of Mighty Enterprises, to inform her that "the City Police Chief, the ALE, the Office of the District Attorney, and the Randolph [County] Sheriff considered the CO Rewards Program to have the same elements of an illegal electronic sweepstakes which violates both the Video Sweepstakes Law and the Gambling Statutes." He also warned Moffitt that "if Mighty Enterprises did not cease all operations, including the CO Rewards Program[,] by June 30, 2015, she and the other principals and employees of Mighty Enterprises would be charged criminally, and . . . the company's equipment and other personal property would be confiscated." As a result, Mighty Enterprises shut down its operations until the legality of the CO Rewards Program could be determined by a court.

On 20 August 2015, Plaintiffs filed the present action in Randolph County Superior Court requesting, *inter alia,* that the trial court (1) declare that the CO Rewards Program does not violate North Carolina law; and (2) enjoin the defendants from taking law enforcement action against retail establishments for offering the CO

Rewards Program. The complaint named as defendants Patrick McCrory, Governor of North Carolina; Frank L. Perry, Secretary of the North Carolina Department of Public Safety; Mark J. Senter, Branch Head of ALE; Jody Williams, Asheboro Police Chief; and Maynard B. Reid, Jr., Sheriff of Randolph County (collectively "Defendants"). All of the defendants were sued solely in their official capacities.

Plaintiffs alleged in their amended complaint that "ALE and other state officials desire to eradicate all electronic sweepstakes or electronic rewards programs from the State of North Carolina, including the CO Rewards Program, without regard to whether such sweepstakes or rewards programs violate the Gambling Statutes or the Video Sweepstakes Statute, or other applicable law." Plaintiffs also asserted that ALE officers, in conjunction with local law enforcement agencies, have participated in numerous raids of businesses offering rewards programs, resulting in both threatened and actual prosecutions. Plaintiffs further alleged that "[a]s a direct result of threats by ALE and increased activity by ALE and other local and state officials, [T&A] and Crazie Overstock are being harmed because current and potential Retail Establishments are afraid to offer the CO Rewards Program, even though that program complies fully with all applicable laws."

On 1 October 2015, Defendants McCrory, Perry, and Senter filed a motion to dismiss pursuant to Rule 12(b)(1) based on sovereign immunity and under Rule 12(b)(6) on the ground that the complaint failed to state a claim upon which relief

could be granted against them. On 7 October 2015, Chief Williams filed a motion to dismiss under Rules 12(b)(1), (2), and (6) in which he asserted that Plaintiffs' claims against him were "barred by sovereign and/or government immunity" and that Plaintiffs had failed to show the existence of an actual controversy.

A hearing on Defendants' motions was held on 12 October 2015 before the Honorable Michael D. Duncan. The arguments at the hearing were limited to the issues of whether Defendants were entitled to sovereign or governmental immunity and whether a justiciable controversy existed. The trial court issued an order on 19 November 2015 granting Defendants' motions and concluding that (1) dismissal of Plaintiffs' claims was proper under Rule 12(b)(6); and (2) "in the absence of any allegation of waiver, sovereign/governmental immunity bars the Plaintiff[s'] claims against all of the Defendants in this action pursuant both to Rule 12(b)(1) and Rule 12(b)(2) . . . ."[1] Plaintiffs filed a timely notice of appeal.

**Analysis**

Plaintiffs argue on appeal that the trial court erred in granting Defendants' respective motions to dismiss because (1) neither sovereign nor governmental

---

[1] Our review of the hearing transcript reveals that no arguments were made at the 12 October 2015 hearing on the issue of whether the CO Rewards Program actually violated any North Carolina statutes. Nor do the parties contend on appeal that the trial court's ruling was based upon that issue. Accordingly, we construe the trial court's order as based solely on the issues of immunity and justiciability. *See Myers v. McGrady*, 170 N.C. App. 501, 509, 613 S.E.2d 334, 340 (2005) ("Where the record does not contain anything in the pleadings, transcripts, or otherwise, to indicate that an issue was presented to the trial court we refuse to address the issue for the first time on appeal." (citation, quotation marks, ellipses, and brackets omitted)), *rev'd on other grounds*, 360 N.C. 460, 628 S.E.2d 761 (2006).

immunity bars this action; and (2) Plaintiffs' pleadings demonstrated the existence of a justiciable controversy. We address each of these issues in turn.

## I. Sovereign Immunity

Under the doctrine of sovereign immunity, "a state may not be sued in its own courts or elsewhere unless by statute it has consented to be sued or has otherwise waived its immunity from suit." *N.C. Ins. Guar. Ass'n v. Bd. of Trs. of Guilford Tech. Cmty. Coll.*, 364 N.C. 102, 107, 691 S.E.2d 694, 697 (2010) (citation omitted). This immunity encompasses "subordinate division[s] of the state, or agenc[ies] exercising statutory governmental functions . . . ." *Id.* (citation omitted). Where, as here, public officials are sued in their official capacities, the claims against them are deemed to be claims against the entities for which they are employed. *See Moore v. City of Creedmoor*, 345 N.C. 356, 367, 481 S.E.2d 14, 21 (1997) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." (citation and quotation marks omitted)).[2]

---

[2] As an initial matter, with regard to Plaintiffs' claims against Chief Williams, the parties disagree as to whether the State's sovereign immunity — if otherwise applicable in this case — would cover him given that he is a local official rather than a State official. It is true that the doctrine of *governmental* immunity generally applies to local entities whereas *sovereign* immunity applies to State entities and that sovereign immunity is broader in scope than governmental immunity. *See Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 335 n.1, 678 S.E.2d 351, 353 n.1 (2009) (noting that immunity possessed by county agencies is "identified as governmental immunity, while sovereign immunity applies to the State and its agencies"); *Evans v. Hous. Auth. of City of Raleigh*, 359 N.C. 50, 53, 602 S.E.2d 668, 670 (2004) (explaining that governmental and sovereign "immunities do not apply uniformly"). Plaintiffs argue that local law enforcement entities are not entitled to the State's sovereign immunity even when sued for declaratory or injunctive relief (rather than for monetary damages) in lawsuits arising from enforcement of state laws. However, we need not resolve this issue

However, our Supreme Court has recognized the existence of a limited exception to sovereign immunity in certain cases where plaintiffs seek declaratory or injunctive relief against State agencies that act "in excess of the authority granted [to them] under [a] statute and invade or threaten to invade personal or property rights of a citizen in disregard of the law." *Charlotte-Mecklenburg Hosp. Auth. v. N.C. Indus. Comm'n*, 336 N.C. 200, 208, 443 S.E.2d 716, 721 (1994), *superseded by statute on other grounds as stated in Mehaffey v. Burger King*, 367 N.C. 120, 749 S.E.2d 252 (2013).

North Carolina's appellate courts have recently applied this principle in *Sandhill Amusements, Inc. v. Sheriff of Onslow County*, 236 N.C. App. 340, 762 S.E.2d 666 (2014), *rev'd per curiam for the reasons stated in the dissenting opinion*, 368 N.C. 91, 773 S.E.2d 55 (2015), which rejected a similar sovereign immunity argument raised by a defendant on analogous facts. In that case, one of the plaintiffs, Gift Surplus, LLC ("Gift Surplus"), licensed to retail stores certain "sweepstakes promotion devices used to promote the sale of gift cards and e-commerce business." *Sandhill Amusements*, 236 N.C. App. at 341 n.1, 762 S.E.2d at 669 n.1. Through kiosks provided by Gift Surplus, customers could purchase gift certificates to use in Gift Surplus's online store. When customers bought these gift certificates, they also

---

because, for the reasons explained below, we hold that sovereign immunity does not serve as a bar to Plaintiffs' claims in this action.

received credits to play electronic games on the kiosks. The first phase of these games was based purely on chance while the second phase required players to make a judgment regarding which way to turn a reel. *Id.* at 343, 762 S.E.2d at 670. Another plaintiff, Sandhill Amusements, LLC ("Sandhill"), was the distributor of Gift Surplus's kiosks in the Onslow County, North Carolina area. *Id.* at 344 n.1, 762 S.E.2d at 669 n.1.

After receiving complaints regarding these games, officers from the Onslow County Sheriff's Office visited a store featuring Gift Surplus kiosks and documented how the machines worked. After subsequently receiving an opinion from ALE that the kiosks were "illegal video sweepstakes machines," the sheriff and the district attorney sent a letter to the owner of Sandhill warning him that if the promotion was not stopped the kiosks would be seized as evidence and persons in possession of them would be criminally prosecuted. *Id.* at 344, 762 S.E.2d at 670. As a result of this letter, Sandhill removed kiosks from two Onslow County locations and decided not to place kiosks in five other locations. *Id.*

Sandhill and Gift Surplus filed a lawsuit against the sheriff and the district attorney[3] seeking a declaration that the promotion was "not prohibited gambling, lottery or gaming products" and an injunction against further enforcement action by the defendants in relation to the promotion. *Id.* at 344, 762 S.E.2d at 671. The sheriff

---

[3] The plaintiffs subsequently dismissed the district attorney as a party to the action.

moved to dismiss under Rules 12(b)(1), (2), and (6) based in part on sovereign immunity and the absence of a justiciable controversy. The trial court denied the motion to dismiss and entered a preliminary injunction barring the sheriff from initiating criminal action against the plaintiffs in connection with the promotion. *Id.* at 345, 762 S.E.2d at 671.

In a divided opinion by this Court, the majority disagreed with the sheriff's argument that the plaintiffs' claims were barred by sovereign immunity, explaining that because "the declaratory judgment procedure is the only method by which Plaintiffs have recourse to protect their property interests in the kiosks, we hold that . . . sovereign immunity did not bar Plaintiffs' claim for injunctive relief." *Id.* at 351, 762 S.E.2d at 675. After further determining that the plaintiffs had shown the existence of a justiciable controversy, the majority considered the merits of the appeal and ultimately affirmed in part and vacated in part the preliminary injunction that the trial court had issued. *Id.* at 357, 762 S.E.2d at 679.

The dissenting judge filed a separate opinion stating his agreement with the majority's determination of the immunity and justiciability issues but concluding that the preliminary injunction should be vacated in its entirety because the plaintiffs had failed to demonstrate a likelihood that they would ultimately be able to prove that the promotion did not violate North Carolina's sweepstakes statute. *Id.* at 358, 762 S.E.2d at 679 (Ervin, J., dissenting).

The State appealed to our Supreme Court, which reversed the majority in a *per curiam* opinion "[f]or the reasons stated in the dissenting opinion[.]" *Sandhill Amusements*, 368 N.C. at 91, 773 S.E.2d at 56. Accordingly, the determination that sovereign immunity did not bar the plaintiffs' claims — which was agreed to by both the majority and the dissent and was left undisturbed by the Supreme Court — continues to have precedential value and serves to foreclose Defendants' sovereign immunity argument in the present case.

Defendants argue, in the alternative, that even if sovereign immunity does not serve as an absolute bar to this type of lawsuit, they are nevertheless entitled to immunity based on Plaintiffs' failure to expressly plead a waiver. *See Can Am S., LLC v. State*, 234 N.C. App. 119, 125, 759 S.E.2d 304, 309 ("Sovereign immunity is not merely a defense to a cause of action; it is a bar to actions that requires a plaintiff to establish a waiver of immunity." (citation omitted)), *disc. review denied*, 367 N.C. 791, 766 S.E.2d 624 (2014).

Citing *Phillips v. Orange County Health Department*, 237 N.C. App. 249, 765 S.E.2d 811 (2014), Plaintiffs respond by contending that because sovereign immunity does not apply at all in this context, it is illogical to require them to have pled a waiver of such immunity. *See id.* at 256-57, 765 S.E.2d at 817 ("It is true that plaintiffs failed to allege that [the defendant] had waived . . . immunity in their complaint. . . .

Although defendant enjoys . . . immunity, such immunity does not bar the claims brought by plaintiffs in the instant case. Therefore, this argument is overruled.").

However, we need not resolve this issue because even assuming — without deciding — that such a pleading requirement existed, Plaintiffs met that burden in paragraph 89 of their amended complaint by alleging that "Defendants are not entitled to sovereign immunity . . . ." While Defendants argue that the waiver language contained in this paragraph was legally insufficient because it failed to plead with specificity a recognized exception to sovereign immunity, we have previously held that "precise language alleging that the State has waived the defense of sovereign immunity is not necessary, but, rather, the complaint need only contain sufficient allegations to provide a reasonable forecast of waiver." *Can Am S.*, 234 N.C. App. at 125, 759 S.E.2d at 309 (citation, quotation marks, and brackets omitted); *see also Fabrikant v. Currituck Cty.*, 174 N.C. App. 30, 38, 621 S.E.2d 19, 25 (2005) ("[A]s long as the complaint contains sufficient allegations to provide a reasonable forecast of waiver, precise language alleging that the State has waived the defense of sovereign immunity is not necessary.").[4]

Accordingly, even if Plaintiffs were, in fact, required to specifically plead a waiver of Defendants' sovereign immunity in their complaint, they met that burden

---

[4] We note that at oral argument counsel for Defendants were unable to state precisely how such a waiver allegation should have been worded in Plaintiffs' pleadings in order to properly allege a waiver of sovereign immunity.

because the above-quoted language in paragraph 89 in conjunction with the substantive allegations in their amended complaint clearly served to "provide a reasonable forecast of waiver." *See Can Am S.*, 234 N.C. App. at 125, 759 S.E.2d at 309 (citation and quotation marks omitted). Thus, we hold that the trial court erred in dismissing this action based on sovereign immunity.

## II. Justiciability

Plaintiffs also argue that the trial court erred in dismissing this action pursuant to Rule 12(b)(6) based on their failure to present a justiciable controversy.[5] Pursuant to the North Carolina Declaratory Judgment Act, "[a]ny person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder." N.C. Gen. Stat. § 1-254 (2015). In construing this statute, the Supreme Court has explained that

> [a]lthough a declaratory judgment action must involve an actual controversy between the parties, plaintiffs are not required to allege or prove that a traditional cause of action exists against defendants in order to establish an actual controversy. A declaratory judgment should issue (1) when

---

[5] While the trial court appears to have viewed Rule 12(b)(6) as the appropriate provision of Rule 12 under which to dismiss a claim on nonjusticiability grounds, the failure to present a justiciable controversy is actually an issue of subject matter jurisdiction and, therefore, within the scope of Rule 12(b)(1). *See Sharpe v. Park Newspapers of Lumberton, Inc.*, 317 N.C. 579, 584, 347 S.E.2d 25, 29 (1986) ("[I]n order for a court to have subject matter jurisdiction to render a declaratory judgment, an actual controversy must exist between the parties . . . ."); *Yeager v. Yeager*, 228 N.C. App. 562, 565, 746 S.E.2d 427, 430 (2013) ("[A] trial court does not have subject matter jurisdiction over a non-justiciable claim.").

it will serve a useful purpose in clarifying and settling the legal relations at issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding.

*Goldston v. State*, 361 N.C. 26, 33, 637 S.E.2d 876, 881 (2006) (internal citations, quotation marks, and brackets omitted). The Supreme Court has also stated that "[p]laintiffs are not required to sustain actual losses in order to make a test case; such a requirement would thwart the remedial purpose of the Declaratory Judgment Act." *Charlotte-Mecklenburg Hosp. Auth.*, 336 N.C. at 214, 443 S.E.2d at 725 (citation, quotation marks, and brackets omitted).

We have addressed on several prior occasions the issue of whether justiciable controversies existed under the Declaratory Judgment Act where plaintiffs alleged that law enforcement agencies were improperly seeking to prohibit them from offering promotional rewards programs. Most recently, in *Sandhill Amusements* — as discussed above — a disagreement existed between the plaintiffs and the sheriff, the district attorney, and ALE regarding the legality of the kiosks that Gift Surplus licensed and Sandhill distributed to retail stores. *Sandhill Amusements*, 236 N.C. App. at 356, 762 S.E.2d at 678. The controversy culminated in the sheriff and district attorney sending the owner of Sandhill a letter threatening enforcement action. *Id.*

The majority in this Court held that a justiciable controversy existed given that the plaintiffs' allegations centered on "whether the kiosks at issue were illegal and the uncertainty concerning the legality of these kiosks ultimately impacts Plaintiffs'

ability to operate a business going forward." *Id.* at 357, 762 S.E.2d at 678. As further support for its conclusion that the plaintiffs' claims were justiciable, the majority noted that the "Plaintiffs alleged in their complaint that, since Sheriff Brown issued the . . . letter [threatening criminal action], existing retail outlets that used Plaintiffs' products had removed the kiosks or chosen not to use the kiosks due to the uncertainty surrounding their legality." *Id.*[6]

In making this determination, the majority relied upon our decision in *American Treasures, Inc. v. State*, 173 N.C. App. 170, 617 S.E.2d 346 (2005). In that case, the plaintiff, Treasured Arts, Inc. ("Treasured Arts"), was in the business of selling pre-paid long-distance phone cards, which it distributed through convenience stores. Attached to each phone card was a free promotional "scratch-off" game piece that allowed purchasers to win cash awards. Although the State did not actually bring — or even threaten — enforcement action against Treasured Arts itself, Treasured Arts received reports that ALE agents were threating to revoke the alcoholic beverage licenses of convenience stores carrying its phone cards on the ground that the accompanying promotional scratch-off game constituted illegal gambling. *Id.* at 173-74, 617 S.E.2d at 348.

---

[6] The dissent in *Sandhill Amusements* — which, as noted above, was adopted by our Supreme Court — stated its agreement with the majority's holding regarding the justiciability of the plaintiffs' claims. *See id.* at 358, 762 S.E.2d at 679 (Ervin, J., dissenting).

The plaintiff brought an action for declaratory and injunctive relief against the Governor, the Department of Crime Control and Public Safety, and ALE to determine the legality of the promotion. The trial court entered an order declaring that the promotion did not constitute illegal gambling and enjoining the defendants from interfering with the alcohol licenses or sale of Treasured Arts' phone cards by convenience stores. *Id.* at 174, 617 S.E.2d at 349.

On appeal, this Court rejected the defendants' argument that the plaintiffs had failed to show a justiciable controversy. We acknowledged that, as a general matter, "courts of equity are without jurisdiction to interfere by injunction to restrain a criminal prosecution for the violation of statutes . . . whether it has been merely threatened or has already been commenced." *Id.* at 175, 617 S.E.2d at 349 (citation, quotations marks, ellipses, and brackets omitted). However, citing our Supreme Court's decision in *McCormick v. Proctor*, 217 N.C. 23, 6 S.E.2d 870 (1940), we explained that "equity may nevertheless be invoked as an exception to those principles and may operate to 'interfere, even to prevent criminal prosecutions, when this is necessary to protect effectually property rights and to prevent irremediable injuries to the rights of persons.' " *American Treasures*, 173 N.C. App. at 175, 617 S.E.2d at 349 (quoting *McCormick*, 217 N.C. at 29, 6 S.E.2d at 874).

We ultimately concluded that the complaint in *American Treasures* presented a justiciable controversy because "the declaratory judgment procedure is the only way

plaintiff can protect its property rights and prevent ALE from foreclosing the sale of its product in convenience stores." *Id.* at 176, 617 S.E.2d at 350. Moreover, we noted that although "[t]here is no indication in the record that a prosecution is pending against plaintiff," the existence of an actual prosecution was not necessary in order to present a justiciable controversy "in light of the State's ability to curtail the sale of plaintiff's product by threatening retail stores with the loss of their alcohol licenses upon failure to cease such sales." *Id.*[7]

In the present case, Plaintiffs have presented a justiciable controversy for reasons similar to those set forth in *Sandhill Amusements* and *American Treasures*. Plaintiffs are the licensor and distributor of the CO Rewards Program, which law enforcement officers have determined to be in violation of North Carolina's criminal laws. Moreover, officers have threatened criminal enforcement action against establishments offering this promotion, and such threats impede Plaintiffs' ability to license and distribute the program. Therefore, the uncertainty as to whether the CO

---

[7] There are a number of other reported decisions in which our appellate courts have reached the merits of declaratory judgment claims involving the proper construction of North Carolina's gambling statutes without first explicitly addressing the issue of justiciability. *See, e.g.*, *Joker Club, L.L.C. v. Hardin*, 183 N.C. App. 92, 93, 643 S.E.2d 626, 628 (2007) (declaratory judgment as to legality of poker club plaintiff planned to open); *Collins Coin Music Co. of N.C. v. N.C. Alcoholic Beverage Control Comm'n*, 117 N.C. App. 405, 405, 451 S.E.2d 306, 307 (1994) (declaratory judgment regarding whether video games offered by plaintiff were illegal slot machines), *disc. review denied*, 340 N.C. 110, 456 S.E.2d 312 (1995); *Animal Prot. Soc'y of Durham, Inc. v. State*, 95 N.C. App. 258, 262, 382 S.E.2d 801, 803 (1989) (declaratory and injunctive relief sought as to whether charitable sales promotion violated bingo statute). Defendants here have failed to offer any valid explanation as to why the controversies existing in those cases were justiciable while the present action is not.

Rewards Program violates North Carolina's gambling and sweepstakes statutes "impacts Plaintiffs' ability to operate a business going forward." *Sandhill Amusements*, 236 N.C. App. at 357, 762 S.E.2d at 678. Accordingly, we conclude that because Plaintiffs have presented a justiciable controversy, the trial court erred in granting Defendants' motions to dismiss on the ground of nonjusticiability.[8]

## Conclusion

For the reasons stated above, we reverse the trial court's 19 November 2015 order and remand for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

Judges CALABRIA and TYSON concur.

---

[8] We express no opinion on the ultimate issue in this litigation as to whether the CO Rewards Program is legal under North Carolina law.